COHEN & CO. *et al. v.* WOLFF & BUCHWALD *et al.*

Under the allegations of the petition as amended, the petitioners had a common interest in setting aside the alleged fraudulent purchases of their goods, though different parcels of the goods were separately purchased from the petitioners respectively, the purchasers being insolvent, and having bought the goods never intending to pay for them, and having fraudulently mortgaged the whole to other persons who had conspired and colluded with them in the fraudulent scheme by which the goods were obtained; the petition praying for a recovery by each petitioner of his own goods, on the ground that because of the fraud in the purchase, the title had never passed from him. The petitioners certainly had a common interest in setting these mortgages aside, and a court properly obtaining jurisdiction for this purpose could grant to each of the plaintiffs other appropriate relief from the consequences of the fraud perpetrated upon all alike by the defendants. Consequently there was no misjoinder of plaintiffs. There was equity in the petition, the mortgagees were necessary and proper parties, and the court erred in sustaining the demurrer to the petition.

June 26, 1893.

Equitable petition. Before Judge MILLER. Bibb superior court. November term, 1892.

Six firms brought a petition against Wolff & Buchwald, a firm composed of Mrs. Lillie Wolff and Ephraim Buchwald, and against Mary Buchwald, Edward Wolff, Peter Funkenstein, and Morris Brothers, a firm composed of Louis and Joseph Morris, the Wolffs and the Buchwalds being residents of Bibb county, and the other defendants of Clarke county. The court sustained a demurrer to the petition, to which ruling the plaintiffs excepted.

The petition sets forth the following allegations: The plaintiffs are creditors of Wolff & Buchwald for goods furnished, and they attach as exhibits to the petition statements of their accounts, the items thereof appearing to consist of liquors, cigars, etc. Cohen & Co. have sued out an attachment for purchase money of the goods furnished by them, which has been levied on certain goods of the invoiced value of $130.88, for which they have given bond and now have possession. All of plaintiffs' debts were created by the purchase of goods from them by Wolff & Buchwald for a cigar and liquor business begun about August 1, 1891, and conducted in Macon; said goods went into said business, and payment for the same has been refused. For the purpose of obtaining credit from plaintiffs, said firm stated to the commercial agency of R. G. Dun & Co. that they would have in business $2,000 in cash, equally contributed; that they had purchased and paid for $1,500 worth of goods in Cincinnati; and that they had $500 on deposit with Cohen & Co.; which statement was made about July 4, 1891, and was untrue. It was published by Dun & Co. in their reports to their subscribers; and relying on its truthfulness, as well as other representations made by defendants, plaintiffs extended credit to said firm, which they would not have

done had no such statement been made and published. Substantially the same statement was made by said firm to Steinheimer, a member of the firm of Cohen & Co. Said firm also untruly stated to Pinkussohn, another of plaintiffs, that they had $2,000 in cash invested in said business, equally distributed, and Pinkussohn extended credit relying on said statement, and would not have done so but for the same. Since they extended credit plaintiffs have learned that neither member of said firm had any means, except that Joseph Wolff, the husband of Lillie Wolff, who represented her interest in the firm, put in for her $500 which was given to her by her father, Peter Funkenstein, and that E. Buchwald had and paid in only $1,000 in cash which was given to him by his wife's relatives. Since plaintiffs' goods were purchased, said firm have practically repudiated and shown the falsity of said statements, by giving a mortgage to Peter Funkenstein for $500, one to Mary Buchwald, wife of E. Buchwald, for $800, and one to Morris Brothers, relatives of Mary Buchwald; said mortgages being given upon the idea that the $500 paid into the business by Lillie Wolff was borrowed by the firm and not given to her individually, and that the $1,000 put in by E. Buchwald was not his property, but was borrowed from his wife and her relatives, these being the amounts on which they based their statements of $2,000 invested in the business. If the mortgages are valid the statements were false, and instead of having $2,000 in the business the firm had nothing. By reason of said false representation on which credit was obtained, no title passed from plaintiffs to the firm, and they hold plaintiffs' goods and the proceeds thereof as trustees. At the time said firm asked and obtained credit from plaintiffs, they were insolvent and knew they were so, and they bought plaintiffs' goods with no intention of paying therefor, and with full knowledge

that they were not able and could not reasonably expect to be able to pay for them. Under foreclosure of two of the mortgages the sheriff is in possession of the store, business and assets of said firm, and is about to proceed to sell the same under an order of this court. A large part of plaintiffs' goods are in the stock, and if sold by the sheriff, will be greatly sacrificed. The mortgages cover the entire property of the firm, who have also given the mortgagees an assignment of all accounts, notes and other choses in action held, claimed or owned by them. These mortgages are dated November 11th and 13th, 1891. Two of them were made to secure notes due one day after date, and were foreclosed on November 19th and 20th, 1891. As plaintiffs are informed, an order for quick sale of the property was applied for and obtained. The mortgages are of such amount as to exhaust the entire proceeds that the property would bring at forced sale. They are all parts of a fraudulent scheme to put the property beyond the reach of the plaintiffs and other *bona fide* creditors from whom the property was fraudulently purchased. None of the mortgagees are dealers in the line of business conducted by Wolff & Buchwald; and the mortgages or any of the alleged debts on which they claim to be based, have no connection with the business of selling or furnishing goods to that firm, and if the sheriff's sale is allowed and the mortgagees are permitted to take the proceeds, the moneys arising from the goods will be diverted from the persons from whom the goods were purchased and none of them will collect a dollar of the debts due them. The mortgage of Edward Wolff, while nominally for $1,050 of indebtedness, of which the sum of $500 appears on its face to be past due at the time of foreclosure, was foreclosed for $263.34 principal; and plaintiffs charge that this mortgage being for amount thus in excess of the entire

amount of the claim really owing thereon, was a fraud on creditors, and was intended to hinder and delay them by creating a first lien greatly in excess of any real indebtedness. At the time the mortgage of Morris Brothers was foreclosed it was not due, the same showing on its face that it was not to become due until January 5, 1892; and this foreclosure was an attempt to put the property beyond the reach of creditors. The alleged debts on which the mortgages were based were never heard of by plaintiffs or the other creditors who sold goods to said firm, until the mortgages were filed for record, and if any such debts ever existed they were fraudulently and purposely concealed from plaintiffs and others from whom said firm sought credit, with intent to induce them to extend credit and furnish goods on the faith of the statement made to the mercantile agency, to the effect that said firm owed no money to friends or relatives or any other obligation. If the money for which the mortgages were given was borrowed at all, it was not borrowed by said firm, nor was it borrowed to pay any indebtedness of said firm, but was furnished to Joseph Wolff to enable him on behalf of the firm to use said money as evidence of the firm's financial worth, in obtaining the assistance of Cohen & Co. in making a favorable showing to the mercantile agency as a basis of credit. Morris Brothers, Peter Funkenstein and Mary Buchwald well knew that Wolff & Buchwald had no means whatever, except the $1,500 which they now claim to have loaned them wherewith to start the business. To furnish said money as they now pretend to have furnished it, not for the purpose of paying off any liability of the firm, but to induce creditors to believe that it belonged to the firm and was its capital stock, operated to injure and defraud plaintiffs and others who extended credit; and in equity and good conscience these three persons should

not be allowed to apply the goods so purchased, or their proceeds, to the payment of said alleged indebtedness, to the injury of plaintiffs and other creditors. Said mortgagees had and are chargeable with full notice of the fraud by which said goods were purchased, and by their act put it within the power of the firm to perpetrate the fraud, and cannot claim to be *bona fide* creditors without notice, in respect to the mortgages, as against the equitable title and right of plaintiffs and other creditors from whom goods were fraudulently purchased. Plaintiffs believe and charge that the mortgages were not given to secure any valid subsisting indebtedness, but that the $1,500 claimed to have been furnished as a loan was really the money in part of Lillie Wolff and in part of E. Buchwald, or if not actually the exclusive, individual property of E. Buchwald, was at least suffered by Mary Buchwald to be invested in his name as his share of the capital stock of the business, and to that extent was liable to the exigencies of said business, and was not intended to be a debt against the firm, but was intended to be advanced to E. Buchwald to enable him to go in said business and to be invested therein as his part of the capital stock. Plaintiffs believe that the $500 claimed to have been loaned by Funkenstein was advanced to Lillie Wolff as her part of the capital stock, and it was not intended that E. Buchwald or the firm should be liable or bound to Funkenstein in any manner for the payment of said sum, nor was the same ever an indebtedness of the firm, but was a part of the capital stock, was so treated by the firm, and, as plaintiffs believe, was a gift by Funkenstein to his daughter. He well knew that she had no money as capital stock to invest in the business and that Joseph Wolff had none to invest in her name, and so knowing, furnished said money to be used as her investment therein. Similar allegations are made as to

the $800 claimed to have been loaned by Mrs. Mary Buchwald. Plaintiffs believe and charge that $200 of the money alleged to have been furnished by Morris Brothers was never furnished by them to the firm, but if furnished to any one, was furnished to Joseph Wolff at the request of E. Buchwald as part of the money in the hands of Morris Brothers to which E. Buchwald was entitled by reason of his marriage with Mary Buchwald. It is untrue that the firm ever invested in said business, borrowed money or otherwise, $500 in addition to the $1,500 aforesaid. On the contrary their purpose was to place in the hands of Cohen & Co. the entire amount of cash that could be raised by them, in order that the same might serve as a basis upon which they could get credit by means of the rating of the commercial agency; and it was untrue that said firm had or were able to raise or control any more money than the sum that was put up with Cohen & Co. for the purpose of obtaining such rating. It was by means of putting up said sum in their hands that Cohen & Co. were induced to believe that Wolff & Buchwald had a capital stock of $1,500, and so believing, aided them in obtaining a commercial rating based on the capital stock of that amount clear above all liabilities or obligations to friends or relatives. It was by reason of the statement made by said firm to the commercial agency and the report of the agency based thereon, that plaintiffs and the other bona fide creditors of the firm were induced to sell and furnish the goods that produced the entire property now held by said firm. Mary Buchwald, Peter Funkenstein and Morris Brothers aided and abetted Joseph Wolff and Wolff & Buchwald in perpetrating the fraud that resulted in obtaining from plaintiffs and others the goods that produced their entire assets. The goods of plaintiffs which are still in the stock bear the marks and brands of plaintiffs respectively, and can

be readily identified. By reason of the fraud in pur-
chasing them . they still remain the property of plain-
tiffs, and no valid lien was acquired thereon under the
mortgages. The mortgages and assignments of ac-
counts were parts of one scheme and purpose; and
plaintiffs charge that the same amounted to a voluntary
assignment by insolvent debtors for the benefit of cred-
itors, in violation of the statute requiring such assign-
ments to be accompanied by inventories and schedules
of assets and creditors. Wolff & Buchwald, Joseph
Wolff and Mrs. Mary Buchwald are each insolvent; as
to the solvency of Funkenstein and Morris Brothers,
plaintiffs are not in a position to judge. The right
and title in equity and good conscience of plaintiffs are
similar, and if they and other creditors who sold goods
to the firm on the faith of the same fraudulent state-
ments, were to proceed separately to set up their re-
spective rights, a large part of the property would be
exhausted in expensive litigation by reason of multi-
plicity of suits. By reason whereof plaintiffs file this
petition in behalf of themselves and such other cred-
itors as may be made parties. And they pray for can-
cellation of the mortgages, for opportunity to inspect
and identify the respective portions of goods purchased,
in order that they may assert their title thereto; that
the goods be sold and a separate account be kept of the
portions so purchased from plaintiffs, and the moneys
arising from the same be kept separate and applied to
plaintiffs' accounts; that the title to said goods or
moneys be decreed to be in plaintiffs; that the trust
arising from the fraudulent purchase be decreed to at-
tach to the notes and accounts produced by the pro-
ceeds thereof by Wolff & Buchwald by the sale of said
goods; that plaintiffs have a decree for the amounts of
their respective bills over and above the proceeds of so
much of the goods as they shall succeed in recapturing;

that the defendants be required to produce books, papers, etc.; that the court appoint a receiver and grant such other relief as may be proper.

The grounds of demurrer are, that there is no allegation that the mortgagees, or any of them, had any notice of any fraudulent intent at the time of taking their mortgages, or reasonable grounds to suspect any; that the petition shows that the plaintiffs have no common interest in the matters charged, but that their interests are separate and distinct, and they cannot, therefore, be joined in one petition against defendants; that plaintiffs set forth no property of any character or description to which they claim title, nor do they show any described property in possession of defendants; that there is no allegation that the mortgagees are insolvent; and that there is no equity in the petition.

STEED & WIMBERLY, HILL, HARRIS & BIRCH and JOSEPH FRIED, for plaintiffs. HARDEMAN, DAVIS & TURNER and E. A. COHEN, for defendants.

SIMMONS, Justice.

The error complained of was the sustaining of a demurrer to the equitable petition filed by the plaintiffs below. The substance of the petition is set forth in the reporter's statement.

If the allegations of this petition be true, a plainer or more palpable case of fraud it would be difficult to find. For the purposes of the demurrer, these allegations must be taken as true; but in so doing, we are not to be understood as expressing any opinion as to the real merits of the controversy as the same may appear when the case is tried. In view of the charges that the firm of Wolff & Buchwald, being insolvent, fraudulently procured for themselves a false commercial rating, and upon the credit thus obtained bought goods from various parties, never intending to pay for the same; and that

this firm fraudulently mortgaged the goods so purchased to the other defendants, who had conspired and colluded with the firm in preparing and carrying out the fraudulent scheme by which the goods were obtained, it cannot be seriously contended that there was any misjoinder of defendants. Each and all of the defendants were necessary and proper parties to any proceeding instituted for the purpose of setting aside the frauds complained of. It seems that the court sustained the demurrer mainly upon the idea that there was a misjoinder of plaintiffs. Under the particular facts of this case, we find no difficulty in reaching the conclusion that, although the fraudulent firm had dealt separately with the petitioners and had purchased goods from them respectively in different parcels, these petitioners had a common interest in setting these fraudulent purchases aside. They were the common victims of a general scheme of plunder, and each had a direct and mutual interest in defeating the same. This the petition sought to accomplish, and as an appropriate means looking to this end, it prayed for a recovery by each petitioner of his own goods on the ground that, because of fraud in the purchase, the title had never passed into Wolff & Buchwald. We see no reason why these petitioners could not thus join in an action for the purpose stated, because they certainly had a common interest in setting aside the fraudulent mortgages which stood between each and all of them and the recovery of their goods. These mortgages were the common enemy of them all, and against the mortgages they certainly had a common cause of combat. We think there is no doubt that the court, at the instance of the petitioners complaining jointly, could, under the facts alleged, take jurisdiction of the case for the purpose of declaring the mortgages void; and it seems in perfect accord with the rules of equity pleading and practice, that, having ob-

tained jurisdiction for this purpose, the court could properly take charge of all the matters in controversy, and grant to each of the plaintiffs appropriate relief from the consequences of the fraud perpetrated by the defendants, in pursuance of one and the same design, and affecting alike all of the petitioners.    We are therefore fully satisfied there was no misjoinder of plaintiffs.    The mortgagees were, as such, necessary and proper parties, because they were entitled to be heard upon the question of setting the mortgages aside; and moreover, it was alleged, as has been seen, that they were co-conspirators with Wolff & Buchwald from the very incipiency of the fraudulent scheme.

The court was wrong in sustaining the demurrer to the petition.    This case ought to be tried, and the real truth of it developed.    If the plaintiffs can establish their allegations by proof, they are undoubtedly entitled to relief.                                            *Judgment reversed.*