## VAUGHN *v.* GEORGIA CO-OPERATIVE LOAN CO.

Where a debtor and other persons enter into a fraudulent scheme or conspiracy for the purpose of defeating the collection of a debt due by the former, and in pursuance of the conspiracy do a number of fraudulent and unconscionable acts the effect of which, if permitted to stand, would be to destroy the creditor's lien upon property subject to the payment of this debt, the latter may by equitable petition against all the conspirators, setting forth the facts and containing appropriate prayers, not only obtain a money judgment or decree against the debtor, but also have such other relief against his codefendants as the particular facts and circumstances of the case will justify. A petition of this kind is not multifarious nor demurrable for misjoinder of parties or for misjoinder of causes of action.

April 6, 1896. Argued at the last term.

Equitable petition. Before Judge Callaway. Richmond superior court. October term, 1894.

A demurrer to the petition was overruled, and the defendants excepted. The petition alleged, that plaintiff, the Georgia Co-operative Loan Company, is a duly chartered corporation. Defendants are S. B. Vaughn, his sister Annie J. Dill, and Patrick Armstrong. On December 12, 1891, Vaughn was the owner in fee of a lot in the city of Augusta, described. He purchased it from John B. Vaughn, trustee, Sarah F. Vaughn, life-tenant, Annie J. Dill and M. L. McCord, remaindermen (S. B. Vaughn being the third remainderman), for $2,500, as appears by deed dated June 5, 1891. Previously and while the title was in John B. Vaughn, trustee, the land had been pledged, by security deed dated April 21, 1887, to E. C. Palmer for a loan of $3,500. In order to make the purchase and to pay off the prior lien for balance due under the security deed to Palmer, and to pay accumulated taxes and for other purposes, S. B. Vaughn secured a loan of $5,500 on the land from plaintiff, giving therefor a security deed dated December 12, 1891, and recorded the same day. At the time of his application to plaintiff for this loan and at the date of said deed, S. B.

Vaughn occupied the official fiduciary relation for plaintiff of being its local secretary and agent at Augusta, Georgia, and was a lawyer practicing there.   Because of the trust and confidence arising from the relations above mentioned between Vaughn and plaintiff, plaintiff sent its check for $5,500 to him, and entrusted him with the duty of paying off the prior liens and especially that of Palmer, instead of having those liens properly cancelled before paying over the money or simultaneously therewith, as is the usual practice of plaintiff in making loans; and Vaughn agreed to make a proper distribution of the funds so entrusted to him.   He did not pay off the full demands arising from the loan made by Palmer, but paid only a part of it, and Palmer having died, his administratrix, C. F. Cumming, filed suit against Sarah E. Vaughn, who signed the note with John B. Vaughn, trustee, to the May term, 1893, of the city court of Richmond county, for $662, and on November 24, 1893, obtained a verdict therein for $423.   The first information plaintiff had of S. B. Vaughn not having performed his trust to pay off the prior liens of the debt due Palmer was in November or December, 1893, when S. B. Vaughn told J. D. Proctor, plaintiff's secretary, who was then visiting Augusta, that the administratrix of Palmer had sued for a balance of $662, but that he would easily win the case, that if any judgment should be obtained he would pay it, and that Proctor need not concern himself at all about the matter.   Execution issued on the judgment in the city court in favor of said administratrix, and was levied upon the property.   Under this levy the property was sold on March 6, 1894, for $1,225, and the sheriff made a deed to the same to Patrick Armstrong.   Plaintiff had no notice that the suit of the administratrix had been tried, or verdict rendered, or execution issued, or levy made, or that the sale was being advertised or expected to take place, relying upon the good faith of S. B. Vaughn, who told its secretary in November, 1894, that he need not concern himself about the matter,

and the persons in possession of the property at the time of the levy being tenants of S. B. Vaughn and not of plaintiff. Plaintiff had no knowledge on the subject until after the sale, at which the property on which it had loaned $5,500 on a valuation of $11,000 was sacrificed for $1,225, and its lien entirely divested if said sale should be held legal, which $5,500 would be a total loss to plaintiff as S. B. Vaughn is insolvent. Said Vaughn purposely and deliberately conceived the plan and successfully carried it out, to keep plaintiff in ignorance of the levy and sale, in order that he might buy in the property for himself, or for some one who would secretly hold it for his benefit, and thus free the property from the lien of plaintiff's claim and cause plaintiff to lose its debt; and Annie J. Dill conspired with him in carrying out said plan, and they secured the assistance of Armstrong, though plaintiff does not charge Armstrong with a full knowledge of the facts.    S. B. Vaughn made an agreement with Messrs. Lockhart & Baxter, attorneys for the administratrix, who had moved for a new trial in said case, that if they would dismiss that motion he would settle with them for $500, instead of the amount of the verdict, and he gave his note for the difference, it being a part of said agreement, either by direct expression or necessary implication, that the levy and sale should proceed at once, Vaughn even going so far as to let them know of his purpose to keep plaintiff in ignorance of the sale so that Vaughn might have the property bid in for his benefit. Lockhart & Baxter, who are gentlemen of high character, became concerned about the peculiar attitude in which Vaughn had placed them, and desiring to free themselves from any connection with what began to appear to be a fraudulent scheme, on February 21, 1894, wrote Vaughn: "Upon further consideration of the statements made us by you in regard to sale under *fi. fa.* of Carolyn P. Cumming, admx., we are satisfied that the notice either by you or by us must be given to the Atlanta Loan Co. which holds.

second deed to our security.   We believe the fact that you are, or have been, the agent of this company, coupled with our knowledge that no notice is intended to be given them, would render the sale void for conspiracy, in the first place, and, in the second place, that it might entail unpleasant consequences upon [us] in case of an investigation of the matter by the company.   We must therefore ask, with a view to protecting ourselves and our client, that you notify the company in Atlanta, or that you permit us to do so." In reply to this letter S. B. Vaughn, on February 22, 1894, wrote to them: "You are laboring under a mistake in regard to my agency of the company in Atlanta.   I was the local secretary of the company when they first organized a branch here, but resigned that position about two years ago, and have no connection with the company now whatever. It is not my intention to enter into any conspiracy with any one, but my only aim is to stop this company from pushing me to the wall, and unjustly so too.   I desire and expect to pay them every cent of my indebtedness to them, but they must take it as I agree with them, that is $55.00 per month until paid.   As it is they are trying to make me pay it all up in full and more besides.   Furthermore, when the general manager was down here during the exposition, I told him that you had entered suit against my mother on the same property for $662, but that I expected to gain the case, and that even if I lost it we had enough property to cover the amount outside of this property.   I hope this will explain the matter in a different light, and that you will agree with me that nothing has been kept concealed under the law from anybody.   My idea is to get my sister or Mr. Cumming to buy the property in and hold it, allowing me the equity of redemption, so that as soon as the company agrees to let my contract with them continue, I will then redeem the property.   I do not desire to have a heavy judgment standing over me any way, and they could at least get it and hold it.   So you see I am only acting in good faith

to keep the property from being sacrificed." Accepting the statements of said Vaughn as true, and not wishing to appear officious, Lockhart & Baxter did not notify plaintiff as they at first intended. The property when put up at sale by the sheriff was really bid in by Vaughn, but to carry out his plan to defeat plaintiff's claim he had the bid entered by the sheriff in the name of said Annie J. Vaughn, his sister, and then for the purpose of still further covering up the real facts, they entered into an agreement with Armstrong that he should pay the $1,225 and take the sheriff's deed, but should not be the absolute owner of the property, but hold the same for the benefit of S. B. Vaughn through his sister Annie J. Dill. In pursuance of this agreement Armstrong advanced the money held by him as administrator of J. F. Armstrong, and took the deed in his name as such administrator. But for the action of said Vaughn in inducing Lockhart & Baxter not to notify plaintiff of the sale, it would not have lost its lien upon the property, because it would have willingly advanced the money to pay the $423 execution or any other lien prior to its own. After plaintiff learned of the sale, its secretary came at once to Augusta and offered to pay over the $1,225 and any other actual cost to which Armstrong had been put, if said Vaughn and Annie J. Dill and Armstrong would give such papers as would restore the property to its former condition of being subject to the lien of plaintiff's claim, but all of them failed and refused to accept its offer. The levy of the $423 execution on the property worth according to valuation at the time of the loan over $10,000, and having a market value of $5,000 or $6,000, was grossly excessive, especially as either the eastern or the western portion of the lot could easily have been levied upon and sold separate from the other portion, and would have brought far more than the amount of the execution; and the sale is void by reason of such excessive levy. Armstrong had no right or lawful authority to take the money belonging to the estate

of John F. Armstrong and buy real estate therewith, nor to lend nor advance the money to any one, and take a deed to the same in his name as administrator; and the sale should be set aside upon payment to him by plaintiff of said purchase price of $1,225. No judgment has been entered upon the verdict of the jury in the suit of said administratrix against Sarah E. Vaughn, and consequently no execution could legally issue and no legal sale be had, and hence the deed from the sheriff to Armstrong, administrator, is void. S. B. Vaughn is now indebted to plaintiff upon said loan $5,027, which sum is due and unpaid. A copy of the contract is attached. Plaintiff stands ready to pay off any lien on the property that may have priority over the security deed held by it. It prays, that the sheriff's deed be declared void and cancelled as against its right; that it have judgment against S. B. Vaughn for the sum due it, and the equity of redemption in said mortgaged property be foreclosed; that the property be declared subject to its said judgment after the payment of any prior lien thereon; and for general relief.

*Joseph R. Lamar*, for plaintiff in error.
*Fleming & Alexander*, contra.

Simmons, Chief Justice.

The allegations of the plaintiff's petition are set out by the reporter. The defendants demurred to the petition upon the grounds, that there was no equity therein, and that there was a misjoinder of causes of action and of parties defendant. According to the allegations of the petition, one of the defendants, Vaughn, borrowed $5,500 from the plaintiff, and to secure the same conveyed to the plaintiff certain land in the city of Augusta. Vaughn was at that time the plaintiff's local secretary and agent at Augusta, and having confidence in him as such, the plaintiff sent to him the full amount of the loan, and entrusted him with the duty of paying off prior liens and incumbrances upon

the land, among them the lien of one Palmer, who held a deed to the land as security for a debt. Vaughn failed to pay this debt, and allowed a verdict to be rendered in favor of Palmer's administratrix for the amount of the debt, and the land to be sold under an execution therefor, although no judgment had been entered up on the verdict. Under this execution the land was sold by the sheriff, and according to the petition, Vaughn was himself the purchaser, and had the bid entered in the name of another of the defendants, his sister, for the purpose of concealing the true nature of the transaction; and for the purpose of further concealing it, he had the deed made by the sheriff to Armstrong, who is also a defendant. It further appears that the land was sold at this sale at less than an eighth of its value. It is charged that this was done in pursuance of a fraudulent scheme to free the property from the lien of the plaintiff's claim and cause the plaintiff to lose its debt. The plaintiff prays for a judgment at law against Vaughn on his promissory note, for the foreclosure of the equity of redemption of Vaughn in the land conveyed to the plaintiff to secure the note, and for the setting aside of the sheriff's deed of the property to Armstrong, which is alleged to be fraudulent and void. It will be seen, therefore, that both legal and equitable causes of action are joined, and relief of both kinds prayed for in the petition. Under the uniform procedure act of 1887, all this can be properly done in one suit. In the case of *DeLacy* v. *Hurst*, 83 *Ga.* 229, we said: "That act conferred upon the superior courts jurisdiction to hear and determine all causes of action, whether legal or equitable, or both. . There is no reason now why the court should not give complete and ample relief to all of its suitors, either plaintiffs or defendants, in the same action. It has jurisdiction of the parties and the subject-matter, and in a case such as the case at bar, can grant to the plaintiffs judgment on their claims if it is proper to do so, and at the same time, if proper parties be made, set aside fraudulent

conveyances which are in the way of the execution of that judgment." So in the present case, the plaintiff could obtain a judgment at law against Vaughn on his note, could foreclose his equity of redemption in the land conveyed by him as security for the debt, and if the sheriff's sale was fraudulent and void, could have that sale set aside. Under the facts alleged, there was equity in the petition; there was no misjoinder of causes of action; nor was there a misjoinder of parties defendant. See *Cohen* v. *Wolf*, 92 *Ga.* 199; *Brown* v. *Latham, Id.* 284; *Bowden* v. *Achor*, 95 *Ga.* 243; *Ellis* v. *Pullman, Id.* 445. The court therefore did not err in overruling the demurrer.     *Judgment affirmed.*