DeLACY *et al. v.* HURST, PURNELL & COMPANY *et al.*

1. The judge of the superior court had jurisdiction to hear and determine a demurrer to a petition in vacation, with or without a previous order therefor; and consequently he had authority to allow amendments to the petition in order to perfect it and to meet the grounds of demurrer.

2. If the original bill or petition contain the necessary allegations to give the plaintiffs a cause of action, is addressed to the chancellor instead of the superior court, and prays for *subpœna* instead of process, the plaintiffs can by amendment make it comply with the terms of the uniform procedure act of 1887. Amendments of this character are within the statutory system.

3. An amendment asking that the price of goods plaintiffs had sold defendant be applied to their debt in preference to those of other creditors, properly construed in the light of the other allegations of their petition, did not amount to a new cause of action.

4. The former rule that courts of equity would not entertain a bill as long as the plaintiff had a common law remedy, and that he must allege and prove that he had sued his claim to judgment and had an execution issued thereon, on which a return of *nulla bona* had been made by the sheriff, before equity would take jurisdiction and aid him by setting aside fraudulent conveyances, etc., has been abolished since the passage of the uniform procedure act of 1887, which confers upon the superior courts jurisdiction to hear and determine all causes of action, legal or equitable, or both.

5. To a suit brought under the act of 1887, or put under it by amendment, a demurrer on the ground that complainants have a complete and adequate remedy at law, is not sustainable.

6. The action containing the legal right to have judgment against D. (who resides in Meriwether county) on his indebtedness to the plaintiffs, and the equitable right to have set aside an alleged fraudulent sale by D. to S. (who resided in another county), the superior court of Meriwether county had jurisdiction of the cause.

7. The petition not being filed under the act of 1881, a demurrer on the ground that the requirement of that act as to what should be alleged in the petition thereunder was properly overruled.

| 83 | 223 |
| 84 | 279 |

| 83 | 223 |
| 88 | 144 |

| 83 | 223 |
| 94 | 782 |

| 83 | 223 |
| 98 | 294 |

| 83 | 223 |
| 100 | 191 |

| 83 | 223 |
| 104 | 399 |

| 83 | 223 |
| 107 | 259 |

| 83 | 223 |
| f111 | 385 |

| 83 | 223 |
| f112 | 625 |

| 83 | 223 |
| 113 | 1020 |

| 83 | 223 |
| 117 | 944 |

| 83 | 223 |
| e118 | 667 |

| 83 | 223 |
| 119 | 703 |
| 119 | 914 |

| 83 | 223 |
| 122 | 336 |
| p122 | 337 |

| 83 | 223 |
| 124 | 546 |
| e124 | 646 |

| 83 | 223 |
| 126 | 51 |

8. Some of the claims mentioned in the petition being against a firm of which D. was a member, it will perhaps be necessary, by amendment, to make the other member of that firm a party defendant. July 22, 1889.

Equity. Practice in superior court. Amendments. Actions. Jurisdiction. Before Judge Harris. Meriwether superior court. August term, 1888.

Reported in the decision.

McNeill & Levy, by brief, for plaintiffs in error.

J. M. Terrell and T. A. Atkinson, *contra*.

Simmons, Justice.

The bill in this case is made returnable to the August term, 1888, of Meriwether superior court. It was addressed to the judge of the superior courts of the Coweta circuit, holding and exercising chancery jurisdiction therein. The complainants were Hurst, Purnell & Co. and others, styling themselves creditors of John M. DeLacy and DeLacy & Tallman. The bill was a general creditor's bill, in which John M. DeLacy, of the county of Meriwether, and the firm of Swift & Hamburger, of Muscogee county, were named as parties defendant. It alleged, in substance, that DeLacy was largely engaged in a general merchandise business in Alabama, and at the White Sulphur Springs, Georgia, and in a like business with Tallman at Greenville, Georgia; that in November, 1887, Tallman sold his entire interest in the firm to DeLacy, DeLacy assuming all the liabilities of the firm, and Tallman being then and now insolvent; that DeLacy carried on the last named business in his own name from the time of the sale to the 28th of December, 1887. The complainants set forth the large indebtedness which it was alleged was then due them severally by DeLacy for the goods furnished him at the store in Alabama and at White Sulphur Springs, Georgia, and for goods fur-

nished DeLacy and Tallman at Greenville, Georgia ; and alleged that the goods furnished DeLacy constituted a considerable portion of the three stocks owned by DeLacy and afterwards sold by him to Swift & Hamburger ; that during the summer of 1887, DeLacy and Swift & Hamburger entered into a fraudulent combination against the complainants and other creditors of DeLacy, and in pursuance thereof DeLacy and DeLacy & Tallman executed to Swift & Hamburger at various times mortgages, covering not only real but fictitious and usurious indebtedness, on land and personalty in Georgia and Alabama; that these mortgages were never placed on record, but that just before the expiration of the time allowed for their record, they were taken up and new ones executed in their stead; that this was repeatedly and secretly done up to December, 1887, when there were filed with the clerk for record, two mortgages executed by DeLacy to Swift & Hamburger, one to secure a debt of $34,358, and covering all the stock of goods at Greenville, the other to secure a debt of $6,350, and covering all the stock at White Sulphur Springs; that DeLacy and DeLacy & Tallman also secretly transferred and assigned to Swift & Hamburger all their merchandise, notes, accounts and choses in action, amounting to $150,000, during the summer of 1887. The complainants alleged that they, not knowing of these fraudulent transactions, and relying on the representations of DeLacy that he was solvent and his property unincumbered, and that the firm of DeLacy & Tallman was solvent and its property unincumbered, sold the goods which formed the consideration of the indebtedness referred to ; that Swift & Hamburger, not willing to rely upon the *bona fides* of their two mortgages, and the transfer and assignment of the goods, notes, accounts, etc., on the 28th of December, 1887, entered into a fraudulent agreement with DeLacy, by which he was to and did execute and de-

v 83-15

liver to them a deed and bill of sale of all of his property
of every description in Alabama and Georgia (said prop-
erty amounting in the aggregate to $167,750), to pay
the nominal sum of $51,000.   This deed and bill of sale
were alleged to be fraudulent because the consideration
was grossly inadequate, and because DeLacy had suffi-
cient property not only to pay the just and legal claim
of Swift & Hamburger, but to pay all his other indebt-
edness besides, and was made to hinder, delay and de-
fraud his creditors.   It was alleged that by this sale he
became utterly insolvent.   It was also charged and al-
leged that there was a secret reservation in this sale for
the benefit of himself; also that the debt of Swift &
Hamburger against DeLacy was infected with usury to
the extent of $10,000 or other large sum.   The bill
prayed for a receiver, injunction, and the setting aside
of the conveyance or conveyances above mentioned, the
purging of the claim of Swift & Hamburger of usury,
and that their other claims should be decreed as paid to
the extent of the value of the Alabama property re-
ceived by them, before they should receive any of the
proceeds of the property in Georgia.   The complainants
also prayed for a judgment for the amount of their
claim, and an equitable division of the assets of DeLacy,
and for general relief.   The trial judge refused to grant
the injunction or to appoint a receiver.

At the appearance term of the case, the defendants
filed several demurrers, and an order was taken to hear
the demurrers in vacation.   When the demurrers came
on to be heard in vacation, the complainants amended
their bill by striking out the address and inserting in
lieu of the address, "to the superior court of said
county"; also by striking out the word "orators"
wherever it occurred, and inserting the word "peti-
tioners," and by striking out the word "*subpœna*,"
wherever it occurred and inserting the word "process."
They also amended by charging that by reason of the

fraudulent agreement entered into by the defendants, and also by the fraudulent conduct of DeLacy in concealing his insolvency from the petitioners, the title to the goods had never passed out of them; and they asked that the money received by the defendants from the sale of said goods stand in lieu of the goods. They alleged that Swift & Hamburger were cognizant of this illegal conduct on the part of DeLacy, and used their influence to make it effective.

The defendants objected to these amendments, on the grounds: (1) that they could not be made at chambers; (2) that the amendment proposed to change the proceeding from a bill in equity to a proceeding at law; and (3) that they set out a new and distinct cause of action. Other objections were made which it is unnecessary to mention now. The objections were overruled and the amendments allowed; to which rulings the defendants excepted. The defendants then renewed their demurrer to the bill or petition as amended, on the grounds, substantially, upon which they had originally demurred, and the additional grounds stated above as objections to the amendments. The demurrer was overruled, and the defendants excepted.

1. We do not think that the court erred in allowing the complainants to amend their petition in vacation. An order was taken in term time for the demurrers to be heard in vacation, and whether an order had been taken or not, under section 247 of the code the judge had jurisdiction to hear and determine these demurrers in vacation. The code giving him this jurisdiction, we think it necessarily follows that he would have authority to allow amendments to the bill in order to perfect it and to meet the grounds of demurrer. It would not do to hold that the judge had no authority to allow an amendment to the petition, and that he would be obliged to dismiss the action on account of

some mere formal defect therein, when by allowing the amendment this defect could be cured.

2. Nor do we think there is any merit in the contention of counsel for the plaintiffs in error, that the defendant could not change by amendment an old bill in equity into the form of petition prescribed by the uniform procedure act of 1887. If the original bill or petition contains the necessary allegations to give the plaintiffs a cause of action, and it is addressed to the chancellor instead of to the superior court as the act prescribes, and prays for a *subpœna* instead of process as the act prescribes, we think the plaintiffs can by amendment make it comply with the terms of the act. Amendments of this character are within our statutory system of amendments. See code, §3479, and acts 1884–5, page 36.

3. Nor was there any error in allowing the amendment asking that the price of the goods these plaintiffs had sold the defendants be applied to their debts in preference to those of other creditors. When properly construed, in the light of the other allegations in the bill, this amendment did not amount to a new cause of action.

4. The demurrer which was most strongly insisted on before us (and the decision of which will control this case), was on the ground that "no equitable cause of action is set out in the plaintiffs' said petition as amended, because they do not show that they had reduced their debt to judgment and had execution issued thereon and said execution returned *nulla bona.*"

Under the old rules of equity pleading and practice in this State, this demurrer would have been sustained. Under these rules, courts of equity would not entertain a bill so long as the complainant had a common law remedy. Whenever he applied to a court of equity in such a case as this, it was incumbent on him to show that he had exhausted all his common law remedies; he must allege and prove that he had sued his claim to

judgment, that he had had an execution issued thereon, and that a return of *nulla bona* had been made thereon by the sheriff. When this was alleged in the bill, equity took jurisdiction and would aid him by setting aside fraudulent conveyances, in order that the cloud might be removed from the title of the property and the property bring its full value. *Cubbedge & Hazelhurst* v. *Adams*, 42 *Ga.* 124, and other cases which might be cited.

We think these rules have been abolished in Georgia since the passage of the uniform procedure act of 1887 (acts 1887, p. 64). That act conferred upon the superior courts jurisdiction to hear and determine all causes of action, whether legal or equitable, or both. If the plaintiff has a purely legal action, he can bring it in that court; if he has a purely equitable action, he must bring it in that court; if he has an action both legal and equitable, he must bring it in that court. If it is a purely legal action, then it is tried upon legal principles; if a purely equitable action, equitable principles are applied on the trial of it; if it is partly legal and partly equitable, both legal and equitable principles are applied. This being true, we cannot see the reason for compelling a plaintiff in a case like the one under consideration, to apply first to the superior court and obtain a judgment and have an execution issued and returned *nulla bona*, and then apply to the same court to aid him in enforcing the judgment which that court had previously granted. As said before, the reason that a court of equity would not aid the plaintiff was, because he had a complete and adequate remedy at law, and had not exhausted this remedy; if he did not have a complete and adequate remedy at law, a court of equity would then take jurisdiction. There being now but one court, the court of equity being abolished, the reason of that rule falls, and therefore the rule falls. There is no reason now why the court should not give

complete and ample relief to all of its suitors, either plaintiffs or defendants, in the same action. It has jurisdiction of the parties and the subject-matter, and in a case such as the case at bar, can grant to the plaintiffs judgment on their claims if it is proper to do so, and at the same time, if proper parties be made, set aside fraudulent conveyances which are in the way of the execution of that judgment.

This may seem strange to old practitioners who were born and bred under the old forms and technical rules of procedure. It is difficult for us to give up the forms and technicalities in the study and application of which we have spent the greater portion of our lives. For myself, I can say that I am glad that the legislature had the wisdom to sweep away, by one act, all these forms and technicalities, and to provide for the trial and determination of all the plaintiff's or defendant's rights in one action.

We are not alone in our construction of this law. The Supreme Court of North Carolina, in a case like the present, placed the same construction upon a similar act of the legislature of that State. The facts in that case were very much like the facts in this, and one of the demurrers was the same as the one we are now considering; and the reasoning of Chief Justice Smith in that case is so applicable to the facts and the demurrer before us, that I have taken the liberty of copying it here: "When, under our former system, the law was administered by two separate and distinct tribunals, of which each had its own rules of practice, the court of equity would lend its aid to a creditor in enforcing a legal demand when he had none or an inadequate remedy at law. Hence it became an established doctrine in that court to refuse its assistance unless the creditor had ascertained the amount of his debt by reducing it to judgment, and sued out execution, when the property of the debtor pursued could be

seized and sold thereunder, as in case of a fraudulent and ineffective assignment, in order that a lien might attach, although this was not required when the estate and interest to be apportioned was purely equitable or such as was not accessible to legal process, and in both cases it must be shown (and commonly this was done by the return of *nulla bona* to the execution) that the debtor had no property from which the debt could be satisfied by such legal process.  .  .  .  .  It is obvious that as this rule grew out of the relations of the two courts under the former system, one acting in aid of the other, and was essential to the harmony of their action in the exercise of their separate functions in the administration of the law, so it must of necessity cease to have any force when the powers of both, and the functions of each, are committed to a single tribunal substituted in place of both.   Why should a plaintiff be compelled to sue for and recover his debt, and then to bring a new action to enforce payment out of his debtor's property in the very court that ordered the judgment?   Why should not full relief be had in one action when the same court is to be called on to afford it in the second?  The policy of the new practice, and one of its best features, is to furnish a complete and final remedy for an aggrieved party in a single court, and without needless delay or expense.   The demurrer admits the debt, the insolvency of the debtor, his fraudulent contrivances, with the help of others, to place his property beyond the reach of creditors and secure it for the enjoyment of himself and wife, his large indebtedness still subsisting, and by a fair implication, the want of other property which a creditor can reach.   These facts would seem to remove all obstacles in the way of the relief demanded." Bank *v.* Harris, 84 N. C. 209.

This decision has been referred to and approved by the same court in several later cases.  As to the construction placed upon acts of a similar character by courts of

other States and by text writers, see 1 Pom. Eq. Jur. §40 and note, §§84, 116, 183, 358; 6 Am. & Eng. Enc. of L. 702 and notes; Phillips *v.* Gorham, 17 N. Y. 230; Lattin *v.* McCarty, 41 N. Y. 107; Frank *v.* Robinson, 96 N. C. 33; Pendleton *v.* Dawson, 92 N. C. 186; White *v.* Lyons, 42 Cal. 279; Bliss on Code Pleading; §§4, 5, 6 *et seq.*, and §114 *et seq.*

The allegations in this petition are, in substance, that DeLacy was largely indebted to these plaintiffs for goods purchased by him of them; that DeLacy and Swift & Hamburger had conspired together to hinder, delay and defraud the plaintiffs by a sale by DeLacy to Swift & Hamburger of property of the value of $167,750 in payment of a debt of $51,000; that DeLacy is utterly insolvent, and that $10,000 of the debt claimed by Swift & Hamburger against him is usurious; that secret mortgages were given and renewed from time to time to prevent their being recorded. They pray for a judgment against DeLacy, and that the sale made by him to Swift & Hamburger be set aside. If these facts are true, why should they not be allowed to have full relief in one action? Why should they be compelled to sue and obtain judgment and have execution issued, and a return of *nulla bona,* and then apply to the same court to assist them to set aside the fraudulent sale? Under the act of 1887, we think it can be done, and there is no reason why it should not. See also acts 1884-5, p. 36.

5. The next ground of demurrer insisted upon was, that the complainants had a complete and adequate remedy at law. We think that what we have said above covers this point. Of course if what we have said is sound, there can be no such demurrer as this now upheld, to a suit brought under the act of 1887, or put under it by amendment. 1 Pom. Eq. Jur. §358.

6. The next demurrer insisted on was, that the court in Meriwether county had no jurisdiction of the defendants, Swift & Hamburger, because it appeared from

the allegations in the petition that they resided in Muscogee county. We do not think there was any error in overruling this ground of the demurrer. This was an action containing both legal and equitable rights. The legal right was to have judgment against DeLacy on his indebtedness to the plaintiff; the equitable right was to have an alleged fraudulent sale set aside. In order to do this, DeLacy was a necessary party, because he made and executed the conveyance. Swift & Hamburger were also necessary parties, because they received the deed and the property under it. Substantial relief was prayed against DeLacy; and the constitution (code, §5169) says, " Equity cases shall be tried in the county where the defendant resides against whom substantial relief is prayed." See also code, §4183. We therefore think that the superior court of Meriwether county, under the allegations in this petition, had jurisdiction, and the court below did not err in so holding. Acts 1884–5, p. 36.

7. There were other demurrers filed, alleging that the requirement of the act of 1881 as to what should be alleged in the petition under that act, had not been complied with. In answer, it is sufficient to say that this petition was not filed under that act.

8. As some of the claims mentioned in the petition are against DeLacy & Tallman, perhaps it will be necessary to make Tallman a party to the bill. If so, it can be done by amendment.     *Judgment affirmed.*