## BARNESVILLE MANUFACTURING COMPANY *v..* SCHOFIELD'S SONS COMPANY *et al.*

Creditors holding two executions from justice courts, which had no return of "no property," etc., and which might have been levied but were not, and other creditors holding claims for small sums in the form of open accounts without liens, joining in a creditors' bill, are not entitled to an injunction and the appointment of a receiver against a valuable cotton mill corporation, special circumstances taking the case out of the general rule not having been sufficiently shown.

Argued July 27,—Decided August 14, 1903.

Injunction and receiver. Before Judge Reagan. Pike superior court. May 3, 1903.

*W. W. Lambdin,* for plaintiff in error.

*Estes & Jones, E. A. Stephens,* and *F. E. Radensleben,* contra.

TURNER, J. J. S. Schofield's Sons Company and others, in their own behalf as well as such others as might avail themselves of the proceeding, filed a creditors' petition, but not under the general traders' act, against the Barnesville Manufacturing Company, a corporation, and another, setting out certain liabilities of said

company, averring that it was insolvent, and specifying certain debts that were secured by a first mortgage and others secured by a second mortgage, etc. In this petition it was alleged that on December 5, 1901, a proceeding in bankruptcy had been instituted against the company in the proper court, but that, without an adjudication of bankruptcy, said petition was dismissed for the purpose of a reorganization of said company, and certain allowances were made for attorneys and the receiver, amounting to seven thousand dollars. It was further alleged that certain preferences had been allowed by the board of directors of the company on pre-existing debts to members of the board, in violation of their trust; and certain charges were made as to the mill of the company being idle, large salaries being paid to the president and others nevertheless, and as to the directors having squandered and sacrificed the assets of the company. The petition also alleged that the property of the company, so far as petitioners knew or believed, consisted of a well-located, well-equipped cotton-yarn mill, which, if taken charge of by the court, could be disposed of so as to pay off the valid liens and leave something for petitioners and other creditors in their situation. The petitioners prayed that such of them as might be entitled thereto be given judgment against the defendant company for the amount of their claims; that a receiver be appointed to take charge of the mill and other assets of the company; that certain alleged improper preferences be set aside, etc., etc.

This petition was presented to his honor Judge Reagan, judge of the superior court of Pike county, on the 9th day of May, 1903, who on that day granted a temporary injunction and appointed a temporary receiver. A rule nisi issued, and on May 23, 1903, the case was regularly heard before the judge upon the question whether or not there should be a permanent injunction and receiver; at which hearing answers were filed by the company and by the other defendant, J. L. Kennedy, in which answers the defendants denied under oath and in detail the material allegations contained in the petition. A demurrer, based on various grounds, was also filed by the company. W. L. Scott and M. M. Elliott & Co., claiming small sums as creditors of the company, were by intervention made parties plaintiff. Certain persons appeared before the chancellor in behalf of the plaintiffs, and testified, show-

ing, among other things, the nature and amount of the claims held by the petitioning creditors, and supporting certain allegations set forth in their petition.    The plaintiffs also introduced documentary evidence as follows:    Certified copy of the petition in bankruptcy filed in the circuit court of the United States for the southern district of Georgia, western division, December 5, 1901, against the Barnesville Manufacturing Company, alleging insolvency and debts owing by said company ; also, a petition filed in said court in the name of those who had instituted the bankruptcy proceedings, alleging that the defendant company had perfected its plans for a reorganization, etc., etc., and praying that said bankruptcy proceedings be dismissed; also, an order signed by the Honorable Emory Speer, judge of the United States district court for the southern district, western division, of Georgia, dated April 5, 1902, granting the prayer of petitioners and dismissing the proceedings, and providing for compensation to the receiver and his counsel, fees to the attorney for the petitioning creditors, etc. ; also, an execution issued by the justice's court of the 533d district, G. M., of Pike county, against the Barnesville Manufacturing Company and in favor of J. S. Schofield's Sons Co. for $96.89 principal, with interest and costs, on a judgment dated April 16, 1903 ; also, another fi. fa. issued from the same court against the defendant company, in favor of M. M. Elliott & Co., for $20.00 principal, besides interest and costs, based on a judgment rendered November 20, 1902 ; and also a statement showing the unsecured debts due by the company to various persons who were not parties to the suit, and certain extracts from the minutes of the board of directors of the defendant company, etc., etc.

The court also heard orally certain persons connected with the company and others, in support of the allegations in the petition and of the answers thereto, respectively.    The defendant company introduced a copy of a petition in involuntary bankruptcy, filed by the Stonewall Cotton Mills and others in the United States district court of Georgia, western division, through their attorneys, E. A. Stephens, Esq., and Messrs. Estes & Jones, against the defendant company, alleging as an act of bankruptcy, under the late amendment of the bankrupt act, that said company did, on May 9, 1903, because of its insolvency, suffer a receiver to be put in charge of its property and effects by the Honorable E. J. Reagan,

judge of the superior courts of the Flint circuit, upon a petition presented to him, which proceeding in bankruptcy was by subpœna returnable May 26, 1903, before the bankrupt court, and was founded upon the decree of the superior court in this case, appointing a temporary receiver. At the hearing of the rule nisi, Judge Reagan passed an order granting a permanent injunction and appointing a permanent receiver, which decision and order the Barnesville Manufacturing Company excepted to and assigned as error, specifying that said decision or order is erroneous and illegal for various reasons, the substance of which is that no case was made for the granting of an injunction and the appointment of a receiver.

It has undoubtedly been the general rule that before a court of equity would entertain a bill for the relief of creditors, they must exhaust their legal remedies. *Wolfe* v. *Claflin*, 81 *Ga.* 65; *Albany and Renssellaer Iron and Steel Co.* v. *Southern Agricultural Works*, 76 *Ga.* 169 (3). It is admitted that to this rule, so long established, there were exceptions. See cases just cited. And it is plausibly insisted by the attorneys for the defendants in error that this rule has been superseded in this State. And it is true that this court in 1889, in the case of *DeLacy* v. *Hurst*, 83 *Ga.* 223, held that "The former rule that courts of equity would not entertain a bill as long as the plaintiff had a common-law remedy, and that he must allege and prove that he had sued his claim to judgment and had an execution issued thereon, on which a return of *nulla bona* had been made by the sheriff, before equity would take jurisdiction and aid him by setting aside fraudulent conveyances, etc., has been abolished since the passage of the uniform procedure act of 1887, which confers upon the superior courts jurisdiction to hear and determine all causes of action, legal or equitable, or both." And this decision was afterwards cited with approval by this court in the case of *Kruger* v. *Walker*, 111 *Ga.* 385. But in these cases it will be observed that the decisions were based on demurrers only, which, in effect, claimed that there was no equity in the bills, that an adequate remedy existed at law, etc. No injunction or receiver was asked. In the present case the issue relates entirely to the granting of an injunction and the appointment of a receiver. The remedy here sought is harsh and extraordinary. Our Code of 1895 provides that "The power of

appointing receivers and ordering injunctions should be prudently and cautiously exercised, and except in clear and urgent cases should not be resorted to." § 4902. This provision, now for the first time embodied in our statutory system, is taken literally from the decision of this court in the case of *Tumlin* v. *Vanhorn*, 77 *Ga.* 320 (2). The present code, by another new section, derived from the decisions of this court, also provides: "Creditors without lien can not, as a general rule, enjoin their debtors from disposing of property, nor obtain injunction or other extraordinary relief in equity." § 4918. It may therefore be assumed that this uniform procedure act of 1887 does not affect the safeguards and precautions long observed in injunction and receivership cases. This view is amply sustained by the decision of this court in the case of *Stillwell, Millen & Co.* v. *Savannah Grocery Co.*, 88 *Ga.* 100.

The Barnesville Manufacturing Company, plaintiff in error, owns a cotton factory which cost more than $225,000. Its plant is said to be in good condition, and is estimated to be now worth from $150,000 to $187,500. It owes on bonds, secured by a trust deed, $75,000; and on a second issue of bonds, secured by a subordinate trust deed, $22,000; and on notes and open accounts, about $23,000; aggregating $120,000. To this enumeration of liabilities might be added the shares of stock, plain and preferred. It is significant that of all these liabilities the petitioning creditors represent only two justice's court executions (upon neither of which is there an entry of nulla bona), for $96.89 principal and $23.14, respectively, and four claims on open accounts for $48.30, $5.00, $31.20, and $150.41, respectively, all aggregating $354.94. The president of the plaintiff in error, J. P. Thurman, testified at the hearing before the court below, that, besides the property covered by the trust deeds, the corporation had on hand and subject to levy, dye-stuffs worth $800.00 or $1,000.00; belting, bolts, etc., disconnected and in supply room, worth $800.00; yarns worth $200.00 or $300.00; twenty-nine shares of Gem Knitting Mill stock, worth at least $1,100.00, and about 100,000 feet of dressed lumber, stored in warerooms at the mill, worth $800.00 to $1,-000.00. We see no reason why the small open accounts held by some of the petitioning creditors should not be sued to judgment, and the executions thus obtained levied on these assets, together with the two justice's court executions already obtained. This

course would seem to be better in every way than, in behalf of these small claims, to subject all the property of the company to a receivership.   The cost of a receivership, including allowances to the receiver, allowances to his attorneys, also to the attorneys for the petitioning creditors, also to the attorneys for the corporation, fees of attorneys who may represent bondholders and stockholders, with the probability that the decree for the appointment of a receiver will at once precipitate bankruptcy in an allied proceeding already pending, with a reduplication of all these allowances and more in the bankrupt court, and with the apprehension of shrinkage in the value of the whole property at forced sale, would deter us from departing from the established rules.   Such an administration of this large property would almost certainly cost an enormous sum, compared with the aggregate amount of the claims sought to be collected by the moving creditors.   Such a sacrifice would be needless, because these creditors can well proceed in the ordinary way and at small expense to themselves and to all the other interests involved.   It would also probably leave nothing for unsecured creditors, including the plaintiffs themselves. The co-operation of so many courts with the justice's court, and by the most expensive processes known to any courts, would seem to be neither necessary nor useful.

The charge in the bill that the directors of the corporation have abused their trust by preferring each other, or any one of the board, to the detriment of other creditors, seems to be fully sworn off by the answers and by the testimony.

*Judgment reversed.   All the Justices concur.*