## BENTLEY *et al.* *v.* CRUMMEY & HAMILTON.

1. When in an action of ejectment the declaration is amended by laying an entirely new demise, the statute of limitations, relatively to the plaintiff's right to recover, runs in favor of the defendant until the date of the filing of such amendment.
2. Where a proceeding in the superior court, brought under our uniform procedure act, is partly legal and partly equitable, the legal branch of the case should be controlled, as far as possible, by the legal principles which would have applied had it been the basis of a separate proceeding.
3. Where such a proceeding for both legal and equitable relief embraces what amounts to a suit in ejectment for land, and an amendment is subsequently filed which lays an entirely new demise, such amendment, relatively to the statute of limitations, does not relate back to the date of the filing of the original petition, but should be tried as of the date of the filing of the amendment.
4. Where a deed is introduced in evidence and attacked as a forgery, and it is shown by strong and uncontradicted evidence that the blank on which it is written was printed long after the death of the party by whom the deed purports to have been executed, a finding that such deed is genuine is without evidence to support it, and should be set aside.

Argued January 26, — Decided March 31, 1904.

Equitable petition. Before Judge Roberts. **Wilcox superior court.** May 15, 1903.

*Eldridge Cutts* and *J. W. Haygood,* for plaintiffs.

*J. H. Martin, J. L. Bankston,* and *D. B. Nicholson,* for defendants.

SIMMONS, C. J.  An equitable petition was filed in the superior court of Wilcox county by William H. Bentley, F. A. Bentley, Mary E. Denison, Roxie A. Lynd, and the children of Elizabeth Higgins, seeking to recover certain lots of land hereinafter designated as lots 11, 12, and 13, to have certain deeds canceled as clouds upon petitioners' title, to recover damages for alleged trespasses upon the land, and to restrain further trespass by the defendants.  This petition was amended by "inserting" another lot (number 10), adopting as to this lot the prayers made in the original petition for the recovery of the other lots and for damages. Upon the trial there was a verdict for the defendants.  The plaintiffs moved for a new trial, upon the grounds that the verdict was contrary to law and the evidence and without evidence to support it.  The motion was overruled, and the plaintiffs excepted.  At the outset it may be stated that the defendants did

not show a good paper title to the land involved in this case. As to lots 10, 11, and 12, they showed a chain of title from a man who was not shown ever to have had either title or possession. As to lot 13, they introduced deeds showing a chain of title from the State of Georgia, but the deed from the State's grantee was attacked as a forgery, and the evidence was such that the jury could not lawfully have found the deed to be genuine. The court below, however, overruled the motion for new trial, upon the ground that the defendants showed a good prescriptive title.

The original petition was filed on March 4, 1895, and the amendment adding lot 10 to those sued for was allowed on September 24, 1895. Under these pleadings the petitioners claimed as heirs at law of M. A. Bentley, to whom the State had granted these lots of land. It was alleged that the petitioners were his only heirs at law, except O. S. Bentley and M. A. Bentley's mother, and that the latter had died prior to the bringing of the suit. There was no allegation that the mother, Rachel H. Bentley, had died testate or intestate, or as to who were her heirs. There was certainly no express claim to her share of the estate by the petitioners as her heirs, and no intimation that she had ever had any interest in the lands except as her son's heir. The abstract of title attached to the petition was thoroughly consistent with the body of the instrument. It showed the grant by the State to M. A. Bentley, the latter's death, and that petitioners were his heirs at law. On the trial of the case the defendants introduced in evidence a deed conveying lots 10, 11, and 12 to Rachel H. Bentley, executed by four of the petitioners, the parents of the other three, under whom they claimed, and O. S. Bentley. The petitioners thereupon filed an amendment to their petition, which alleged that the deed was a forgery, and that at the time of its date (1856) two of the petitioners whose names appeared as signing it were minors. This amendment also alleged that petitioners were the only heirs at law of Rachel H. Bentley, except O. S. Bentley and one Harriet Dimmick, and that if the lands were ever conveyed to Rachel H. Bentley they were inherited from her by the petitioners as her heirs. The amendment prayed that, if the conveyance to Rachel H. Bentley be upheld, petitioners recover as her heirs all of the lands except the undivided interest of O. S. Bentley and Harriet Dimmick. This amendment was allowed on September 18, 1902, more than

seven years after the filing of the original petition. In the original petition it was alleged that the defendants were in possession of the lands sued for, and were asserting title thereto. It is true the petitioners referred to the defendants as holding under a "pretended claim of right," and alleged that the title of defendants was "fraudulent and void in so far as it may affect the title of petitioners," but the petition taken as a whole clearly means simply that the defendants' claim was not good as a paper title against the better title of the petitioners. It shows that the defendants entered under a claim of right, exercised acts of ownership and control, and held adversely under deeds which were good as color. These allegations were admitted by the answer. The amendment, allowed in September, 1895, was by consent. While it is very brief and not very explicit, it was clearly intended to adopt as to lot 10 all the allegations made as to the other lots in the original petition. The evidence showed that the defendants held under deeds which were good as color of title. The jury, by the verdict, found that the deed to Rachel H. Bentley by the other heirs was genuine. Such a finding was fully authorized by the evidence, as was also a finding that if two of the petitioners were minors when they signed this deed, they were estopped by long acquiescence to set up their minority to defeat it. Thus as to the lots embraced in this deed, lots 10, 11, and 12, the plaintiffs must be held to have no rights as heirs of M. A. Bentley, but must rely upon the title, as set up in their amendment, derived from Rachel H. Bentley. Against this the defendants set up a prescriptive title based upon the deeds to them, introduced in evidence, and dating back many years, together with the possession under a claim of right alleged by the petitioners and admitted by the answer. If the amendment made in 1902 related back to the filing of the original petition, then there was not sufficient evidence to show a prescriptive title in the defendants prior to that time. If, however, the amendment amounted to a new demise and the case should be tried as to it as though the action had been commenced at the date of its filing, then the defendants' title by prescription had ripened as to the lots to which this amendment related.

In the first place, we are clear that the amendment amounted to a new demise. As above stated, the original petition did not show who were the heirs of Rachel H. Bentley, nor whether she

had died testate or intestate; the petitioners did not set up any claim under her as her heirs; and the abstract was based upon their inheritance from M. A. Bentley. The amendment under consideration set up that the petitioners were her heirs, and that there were no other heirs except O. S. Bentley, who had been named in the original petition as an heir of M. A. Bentley, and Harriet Dimmick, to whom no reference had been made in the original petition. The original petition claimed under M. A. Bentley directly, upon the ground that the petitioners were his heirs at law. The amendment set up a claim by petitioners under a deed by them to Rachel H. Bentley and their inheritance from her as her heirs. Hence the amendment clearly set up a new demise. It is well established that when, in an action of ejectment, "the declaration is amended by laying an entirely new demise, the case as to it should be tried as though the action had not been commenced until the date upon which the amendment introducing this demise was filed, and, relatively to the plaintiff's right to recover, the statutes of prescription would run in favor of the defendant until that date." *Burbage* v. *Fitzgerald*, 98 *Ga.* 582. Does this rule apply in any save suits in ejectment? Does it apply in the present case? The uniform procedure act of 1887 conferred upon the superior court jurisdiction to hear and determine any cause of action, whether legal or equitable, or both. If the cause of action is purely legal, it is tried upon legal principles; if it is purely equitable, equitable principles are applied in the trial; if it is partly legal and partly equitable, both legal and equitable principles are applied. *DeLacy* v. *Hurst*, 83 *Ga.* 229. The present proceeding was partly equitable, for it sought an injunction and prayed that certain deeds be canceled; it was also partly legal, for it sought damages and prayed for the recovery of land. Its legal features should be governed by legal principles. One of these features amounted practically to a suit in ejectment, and in its trial the court should apply the legal principles applicable to suits in ejectment. That the plaintiffs, instead of filing several suits, have seen fit to combine their suit for land with certain equitable proceedings and bring all in one action, is no reason for changing the rules and principles applicable to each branch of the cause of action. On the contrary, each should be controlled, as far as possible, by the principles which would have been appli-

cable had it been made the basis of a separate proceeding. We think that the rule above stated as applicable to suits in ejectment should be none the less applied when the action is not only for the recovery of land but also for other relief which is of an equitable nature. The amendment setting up a new demise should be treated, as to the ejectment feature of the case, as not relating back to the filing of the original petition, but, relatively to the plaintiffs' right to recover on the new demise set up in such amendment, as though the suit had been filed at the time the amendment was allowed. In the present case, therefore, relatively to the petitioners' claim as heirs at law of Rachel H. Bentley, prescription ran in favor of the defendants until the date of the allowance of the amendment. As this was more than seven years after the filing of the original petition, when the pleadings showed the defendants to be in possession under a claim of right, the defendants' title by prescription under color of title had ripened, and the verdict as to lots 10, 11, and 12 was fully authorized by the evidence.

2. Inasmuch as lot 13 was not embraced in the deed to Rachel H. Bentley, the petitioners inherited an undivided interest in it directly from M. A. Bentley. This interest they were entitled to recover under the original petition, unless the defendants could show a title which would prevail against that set up in the petition. As to this lot the action was tried as of the time of the filing of the original petition, and a prescriptive title could not ripen subsequently to that time. We have carefully examined the brief of evidence, and find no evidence whatever upon which to base a finding that the defendants had acquired such a prescriptive title prior to the filing of the petition. It was argued, however, that the defendants had showed a deed from M. A. Bentley, and that, while this deed had been attacked as a forgery, the jury had decided it to be genuine. The deed was dated in 1846, and was upon a printed form or blank. It was shown that the style of type used had never been made until 1875, long after the death of the alleged grantor in the deed. Copies of the letters patent for this design of type were also introduced, and showed that they had been granted in 1875. The only other evidence relative to this issue was that of a witness who swore that the signature appearing on the deed as that of one of the witnesses was not gen-

uine.    To rebut this formidable showing there was not one word of evidence.   The defendants relied upon the deed itself and upon that alone, and now urge that this was an issue of fact which should be left to the jury.    To this we can not agree.    Whether or not a deed is a forgery is a question of fact which should usually be left to the jury.    But here the jury could not lawfully find that the deed was genuine.    Such a finding was absolutely without evidence to sustain it, and must be set aside.    It was established by uncontradicted evidence, by witnesses in positions to know, that the printed form or blank could not be older than the year 1875.    This being established, the jury could not properly or lawfully find that the deed filled out thereon was executed in 1846 or at any other time prior to the death of the grantor in 1854. This is especially true where the only other evidence bearing on the issue was against the genuineness of the deed.   This deed being a forgery, and the defendants having failed to show any prescriptive title to lot 13, the petitioners' title, as to their undivided interests, should have prevailed.    We accordingly affirm the judgment below as to lots 10, 11, and 12, but reverse it as to the petitioners' interests in lot 13.

Judgment affirmed in part and reversed in part.    All the Justices concur, except Fish, P. J., disqualified.