### DEKLE *v.* CARTER *et al.*

1. There was no error in refusing the injunction prayed for.
2. It is true that under the uniform-procedure act of 1887 as partly embodied in the Civil Code (1910), § 5514, a creditor in one action may attack a sale made by a debtor as fraudulent and obtain judgment

against his debtor for his demand, and generally may enforce both legal and equitable rights, and in the one suit seek legal as well as equitable relief such as the cancellation of a deed; but the uniform-procedure act does not make extraordinary remedies applicable or available where they were not so prior to the passage of that act.

3. The ruling of the judge in the present case does not affect any substantial right of the petitioner, and it amounts to a holding that he is rectus in curia under the provisions of the uniform-procedure act; but the judgment to the effect that the petitioner was not entitled to the extraordinary remedy of injunction was correct.

4. In a case where it appears from the application for injunction that the grounds upon which the injunction is sought are that the debtor has transferred to his wife property alleged to be of the value of $120,000 for an alleged consideration of $20,000, the conveyance covering all the property both real and personal of the husband, with the intention to hinder, delay, and defraud his creditors, which allegation is denied by a sworn answer on the part of both husband and wife; and it further appears that the husband is indebted to the petitioner upon four promissory notes, each for the sum of $407.07, and each maturing yearly for four years, three of which notes are not due, the first note having been reduced to judgment and levied upon certain personal property as the property of the husband, to which his wife has interposed a claim not in forma pauperis but accompanied both by a claim bond and a forthcoming bond; and where it is not alleged in the petition that the wife, the claimant, is insolvent, and it further appears that the deed and transfer complained of were executed several months before the petition was filed, the judge is not required, as a matter of law, to apply the writ of injunction upon the ground that the petitioner is remediless at law or that he has not an adequate remedy at law. No special facts or circumstances were recited in the petition which demanded that the judge should hold the defendants until that portion of petitioner's debt which was not due should mature, and the amount represented by the execution against the defendant which had been levied was amply secured. Even if the defendants had not demurred or answered, the trial judge was authorized by the allegations of the petition to refuse an injunction. *McWilliams-Rankin Co.* v. *Thompson*, 135 *Ga.* 424 (69 S. E. 554).

No. 3580. NOVEMBER 17, 1923.

Petition for injunction. Before Judge Kent. Laurens superior court. December 16, 1922.

*Adams, Camp & Youmans,* for plaintiff.

*E. L. Stephens,* for defendants.

RUSSELL, C. J. Dekle brought a petition against J. W. Carter and his wife, Mrs. Georgia Carter, in which he alleged, in substance, that J. W. Carter was indebted to him in the sum of $1628.28 as the principal of four promissory notes, each dated September 24, 1920, and for the principal sum of $407.07, each

respectively due on November 1, 1921, 1922, 1923, and 1924; that there was no provision in the notes by which failure to pay any one of them matured the whole series; that he had sued and obtained a judgment upon the note which matured in 1921; that the execution issued upon that judgment had been levied by the sheriff of Laurens County upon certain personal property as the property of the defendant in fi. fa., and had been claimed by Mrs. Carter, the wife of the latter; that before any of his notes matured, to wit, on June 15, 1921, J. W. Carter made a deed to Mrs. Georgia Carter, purporting to convey all the lands he then possessed, being 1791 acres described in the petition, as well as all his personal property; that he transferred all his property for " the sole, specific, and only purpose of hindering, and delaying your petitioner in the collection of his just debt, and for the purpose of avoiding the payment of the same, and was purposely done to defraud your petitioner, and the defendant Mrs. Georgia Carter, who was at that time his wife, was a party to said fraud, and she knew and well understood at the time the transfer was made that it was done for the purpose of hindering and delaying your petitioner in the collection of his debt and for the purpose of avoiding the payment of the same, and was done for the purpose of defrauding him;" that the consideration of $20,000 expressed in the deed is fictitious and fraudulent, because Mrs. Carter did not pay J. W. Carter anything; that the deed was without consideration and made to defraud petitioner, and Mrs. Georgia Carter knew that such was the intention; that she is asserting title to all the described real estate and all the personal property, in a common purpose with her husband to hinder, delay, and defraud petitioner; and that J. W. Carter is still in possession of the property, though he claims that his possession is under the right and direction of his wife.

It is alleged in the twelfth paragraph of the petition, that on September 12, 1922, the petitioner's fi. fa. was levied on certain personal property embracing six mules and six cows, as described, as the property of J. W. Carter, and on September 25, 1922, Mrs. Georgia Carter, for the purpose of assisting J. W. Carter to defraud the petitioner and to delay and hinder him in the collection of his debt, interposed a claim to the property, now pending in the superior court of Laurens County, " giving both claim and forthcoming bond amply solvent and accepted by the sheriff as the law

provides." It is alleged in the thirteenth paragraph of the petition, that when J. W. Carter transferred his property to his wife he claimed that he was insolvent, and now claims that he has no property of any kind on which to levy said fi. fa., or out of which petitioner could force the payment of his debt, and now claims that after he made said transfer he was left insolvent, and now refuses to pay any part of the debt; he admits that he made the transfer for the purpose of avoiding the payment of petitioner's debt, but claims that it was in satisfaction of some amount that he owed his wife for money out of her estate. The petitioner avers that the transfer was without any consideration; however, "if he should admit that the expressed consideration set forth in the deed represented the true consideration, yet petitioner charges that the transfer was made for the purpose of hindering and delaying your petitioner in the collection of the debt and finally defrauding him out of the same, for the reason that the expressed consideration is totally inadequate," the property at that time being worth $120,000. Mrs. Carter knew that the value of the property was so completely out of proportion to whatever amount her husband was due her that it would be a fraud against his creditors; and in making herself a party to said transaction she acted with the sole purpose with her husband of defrauding petitioner. On information and belief the petitioner charges that it is the purpose of Mrs. Carter to transfer or encumber the property she claims to have purchased from her husband, to other parties who might claim to be innocent purchasers, with the purpose on her part to complete the intended fraud against the petitioner. Three of the notes are not yet due, and petitioner cannot at common law proceed against the maker; and "if his rights in equity should be delayed to await maturity of each note, it would give to the defendants an advantage over your petitioner in their efforts to defraud him, by placing it within her power to transfer or alienate the said property before he could secure a judgment lien against the same." In the premises it would be "equitable and right that said claim case be consolidated with this cause, and held in abeyance until the trial thereof, in order that a complete equity may be done between the parties, and in order to avoid a multiplicity of suits."

The prayers are: (a) That petitioner have judgment upon each of the three notes. (b) That Mrs. Georgia Carter be required to

surrender the deed executed to her by J. W. Carter, that the same be canceled, that the alleged sale of the property described in the deed be decreed to be fraudulent, and that the property described in said deed be subjected 'to the payment of petitioner's debt. (c) That she surrender all notes, mortgages, choses in action, and other evidences of debt which have been transferred to her by, J. W. Carter, that the transfer be declared null and void, and that the notes and accounts be declared to be subject to petitioner's debt. (d) That Mrs. Georgia Carter be enjoined from selling, transferring, alienating, or encumbering in any way any property transferred to her by J. W. Carter, especially any of the land described in the deed from him to her. (e) That such other and further relief be granted as the exigencies of the case may seem to require. Copies of the notes and the deed referred to are attached to the petition. The notes were originally payable to the Atlantic Land Company, and were indorsed to the petitioner without recourse. The deed from, J. W. Carter to Mrs. Georgia Carter recites a consideration of $20,000, and purports to convey two tracts of land, the one containing 1389 acres, more or less, and the other 402 acres, more or less, each tract being particularly described; and title is warranted.

On October 17, 1922, a temporary restraining order was granted, enjoining the defendants from committing any of the acts complained of and especially from encumbering or transferring any of the property mentioned in the petition; and a rule nisi was issued. The defendants filed a demurrer and an answer; and the cause coming on for a hearing on December 16, 1922, an order was passed revoking and dissolving the temporary restraining order previously granted. This is the judgment which the bill of exceptions seeks to review.

1. There is some question raised in the argument of counsel as to the fact that there appears in the order last referred to a statement that the judgment was rendered after hearing evidence, whereas it is recited in the bill of exceptions that no evidence was considered by the court, but that the judgment of the court was reached solely from a consideration of the failure of the petition itself to set forth sufficient legal reasons requiring the grant of an injunction. As a general rule, recitals in a bill of exceptions may be corrected by the record, if there is a conflict between the

two; but we shall not take the time in the present case to consider the comparative correctness of the statement as to this point. Treating the case as if the judge had nothing before him but the petition, we think he properly held that the case was not one requiring the application of the drastic remedy of injunction. The petitioner alleged that the transfer between the husband and his wife was without consideration, and was fraudulenty entered into with the sole purpose on the part of both of them to delay and defraud him in the collection of his debt; and he asked that the entire transaction be avoided, and that all of the property which had been transferred be subjected not only to the lien of the judgment which he had obtained upon one of the notes, but likewise to the lien of the judgments upon three other notes not yet due, which he asked to be accelerated on the ground that the maker had become insolvent. The statements as to the purpose of the wife to dispose of the property which had been transferred to her were purely conclusions of the pleader, because no facts indicating or supporting the conclusions are stated in the petition. It is not alleged that the wife claiming the property is insolvent; and it is alleged that the transfer was made to her not only before the judgment in behalf of the petitioner was obtained, but actually before the suit was brought upon the note. If the petitioner obtains judgment upon his notes which are not due (and for that reason carried no lien against the property), and if he can show that the transfer was as to him fraudulent, the transfer will not stand in the way of his collecting his money. In the meantime, at least so far as the land is concerned (and this is alleged to be of a value far more than $20,000), any probable or possible·purchaser will be subject to lis pendens, and will buy, if any should buy, subject to the right of the petitioner. As to the judgment lien under the note which has been sued on, the claimant has given both a claim bond and a forthcoming bond ample to protect the petitioner's interests. As to the plaintiff's right to enforce his debt in an action in which both legal and equitable rules may be applied as provided by the Civil Civil Code, § 5514, under the provisions of the uniform-procedure act of 1887, he stands unaffected by the ruling of which complaint is made. The judgment of the court merely denied the extraordinary remedy of injunction in a case where there was no legal reason why it should properly have been granted.

Considering all the allegations of the petition as true and proved, and that therefore the question was purely one of law, it does not seem to us that any rule of law required the court to hold the defendants until the petitioner could obtain judgments upon demands not yet payable, under the circumstances stated in the petition.

2. Following the passage of the uniform-procedure act of 1887 and construing it, this court held, in the case of *DeLacy* v. *Hurst,* 83 *Ga.* 223 (9 S. E. 1052), that the old rule under which only creditors having liens could invoke equitable jurisdiction, and that courts of equity would not entertain a bill as long as a plaintiff had a common-law remedy, had been abolished by that act, which is now partially embodied in the Code of 1910, § 5514; but, as pointed out by Chief Justice Bleckley in *Stillwell* v. *Savannah Grocery Co.,* 88 *Ga.* 100 (13 S. E. 963), " The case of *DeLacy* v. *Hurst,* 83 *Ga.* 223, rules nothing as to interlocutory injunctions or receivers. The uniformity procedure act of 1887 does not make extraordinary remedies applicable or available where they were not so before." The ruling of the learned trial judge in the case now before us does not deprive the plaintiff of the benefits of any of the provisions of the uniform-procedure act. The judgment deals solely with the extraordinary remedy of injunction, and this we think was properly declined. As said by Chief Justice Bleckley, the decision in *DeLacy* v. *Hurst,* supra, " nowhere suggests that an ad interim injunction or receiver can be had in any case in which the like extraordinary remedy could not be invoked prior to the passage of the uniformity procedure act of 1887. On the contrary, in the statement of facts with which the opinion in that case opens, it is said: ' The trial judge refused to grant the injunction or to appoint a receiver.' This refusal was acquiesced in, and consequently the element of injunction and receiver had been eliminated from the case before it reached this court." The trial judge did not dismiss the petition; and the petitioner can attack the sale by the defendant, J. W. Carter, to his wife and codefendant, Mrs. Georgia Carter, as fraudulent, and obtain judgment which will be enforceable if the sale and transfer are set aside, in conformity with the decision of this court in *DeLacy* v. *Hurst,* supra; *Stillwell* v. *Savannah Grocery Co.,* supra; *Booth* v. *Mohr,* 122 *Ga.* 333 (50 S. E. 173); *Helmken* v. *Flood,* 138 *Ga.* 200 (75

S. E. 3), and many other cases which could be cited. This gives effect to § 5514 of the.Code; but an unquestioned right to injunction is not a part of that section.

3, 4. The rulings announced in the third and fourth headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur.*