NEAL *v.* STAPLETON *et al.*
STAPLETON *v.* NEAL.

Nos. 16041, 16042.  January 9, 1948.

*I. S. Peebles Jr.,* and *John S. Averill Jr.,* for plaintiff.

*M. C. Barwick,* for defendants.

DUCKWORTH, Presiding Justice.   (After stating the foregoing facts.)   ■   The petition alleges that early in 1941 the defendant, Mrs. Stapleton, employed the petitioner to wind up the estate of her deceased husband, James Stapleton.  It was first planned to handle the estate without administration, but because of threatened suits and some obligations against the estate it was decided to have an administrator appointed.   Accordingly, the petitioner, on behalf of Mrs. Stapleton, the sole heir, made application for administration and the appointment of W. S. Boyd as administrator, and he qualified at the November term, 1941, of the Court of Ordinary of Jefferson County.  Following the said qualification, the petitioner was employed by W. S. Boyd, as administrator of the said estate, to furnish services as he had been doing, and all proper and necessary services were performed for

■

the estate, including the matter of obtaining a discharge for the administrator. Construing the petition most strongly against the pleader, as must be done on general demurrer, it must be held that the services rendered the estate after the qualification of the administrator were in pursuance of the employment agreement with the administrator, and not by virtue of the original contract with Mrs. Stapleton. Nevertheless the petition sets out a cause of action against Mrs. Stapleton for such services as were rendered her, including the procurement of W. S. Boyd as administrator of the estate and anything done for her until the discharge of the administrator. It is alleged that the petitioner performed diligently all duties devolving upon him, and that payment for his services has been demanded and refused. While no amount is shown to have been agreed upon, the law implies a promise on the part of Mrs. Stapleton, in accepting the services, to pay a reasonable fee therefor, which services obviously terminated with the discharge of the administrator on March 3, 1943. Code, § 3-107; *McDonald* v. *Napier*, 14 *Ga.* 89, 104; *Hudson* v. *Hudson*, 90 *Ga.* 581 (1) (16 S. E. 349); *Wells* v. *Haynes*, 101 *Ga.* 841 (1) (28 S. E. 968); *Jackson* v. *Buice*, 132 *Ga.* 51, 53 (63 S. E. 823); *Kitchens* v. *Pool*, 146 *Ga.* 229, 230 (91 S. E. 81); *Fleming* v. *Phinizy*, 35 *Ga. App.* 792 (1) (134 S. E. 814); *Mitcham* v. *Singleton*, 50 *Ga. App.* 457 (178 S. E. 465). The petition as amended set forth a cause of action against Mrs. Stapleton for services rendered her as above stated, and was also good against the special demurrers.

■ The two deeds which the petition seeks to cancel are alleged to be without consideration, that is, voluntary deeds, and to have rendered the grantor, Mrs. James Stapleton, insolvent. The defendants to the present action are the grantor and the grantee, respectively, in the deeds. They are both necessary parties in a suit to cancel the deeds. *Taylor* v. *Colley*, 138 *Ga.* 41 (74 S. E. 694); *Zeigler* v. *Arnett*, 142 *Ga.* 487 (83 S. E. 112); *Gibbs* v. *Harrelson*, 147 *Ga.* 404 (94 S. E. 235); *Hines* v. *Wilson*, 164 *Ga.* 888 (4) (139 S. E. 802). Although such deeds be valid as between the grantor and the grantee (*Jones* v. *Dougherty*, 10 *Ga.* 273 (5); *Tufts* v. *DuBignon*, 61 *Ga.* 322; *McDowell* v. *McMurria*, 107 *Ga.* 812 (2), 33 S. E. 709, 73 Am. St. R. 155; *Gunn* v. *Chapman*, 166 *Ga.* 279, 142 S. E. 873), the petitioner, a creditor,

as he is shown by the petition to be, is not precluded from attacking them. Code, § 28-104. Such an attack may be made in the same suit which seeks a judgment on the debt. *DeLacy* v. *Hurst*, 83 *Ga.* 223 (4) (9 S. E. 1052); *Vaughn* v. *Georgia Loan Co.*, 98 *Ga.* 288 (25 S. E. 441); *Booth* v. *Mohr*, 122 *Ga.* 333 (1) (50 S. E. 173); *Fourth National Bank* v. *Mooty*, 143 *Ga.* 137 (84 S. E. 546); *Deckle* v. *Carter*, 156 *Ga.* 760 (2) (120 S. E. 9); *May Realty Co.* v. *Forsdick*, 180 *Ga.* 226, 229 (178 S. E. 660). The defendant Boyd was, therefore, a proper and necessary party defendant in the present suit, and if sufficient grounds for cancellation are alleged it was error to sustain the demurrer and dismiss the action as to him. The Code declares that certain specified acts of debtors shall be fraudulent in law against creditors and as to them null and void, among which acts is "Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance." Code, § 28-201 (3). This rule of law is mandatory, and is based upon the moral and legal principle that one should be just before he is generous. *Cohen* v. *Parish*, 105 *Ga.* 339, 347 (31 S. E. 205). While under the Code, § 28-201 (2), a fraudulent intent by the debtor is necessary to cancellation, it need not be shown where a voluntary conveyance is rendered void under the Code, § 28-201 (3), supra. *First National Bank* v. *Bayless*, 96 *Ga.* 684 (1) (23 S. E. 851); *Lane* v. *Newton*, 140 *Ga.* 415 (2) (78 S. E. 1082); *Cunningham* v. *Avakian*, 192 *Ga.* 391 (2) (15 S. E. 2d, 493); *Moncrief Furnace Co.* v. *Northwest Atlanta Bank*, 193 *Ga.* 440 (1-a) (19 S. E. 2d, 155); *Russell* v. *Glenn*, 197 *Ga.* 816 (30 S. E. 2d, 617). The allegations of the petition state a cause of action for cancellation, and the defendants, Mrs. Stapleton and Boyd, were both proper and necessary parties. The court erred in sustaining the demurrer as to the defendant Boyd and that portion of the petition seeking cancellation of the two deeds, and the judgment is to that extent reversed.

The contention of counsel for the defendants that the two deeds were not voluntary, since the petition alleges that they were induced by fraud, trickery, misplaced confidence, etc., and Mrs. Stapleton was not aware that she was disposing of her property, is not well taken. A voluntary deed as contemplated under the Code, § 28-201 (3), has no relation to the question whether or

not the grantor intended to execute a deed to her property, but is a deed which is totally without consideration. See *Martin* v. *White*, 115 *Ga.* 866, 868 (42 S. E. 279) ; *Pierce* v. *Bemis*, 120 *Ga.* 536 (48 S. E. 128) ; *Holloman* v. *Board of Education*, 168 *Ga.* 359, 364 (147 S. E. 882) ; 44 Words & Phrases (Perm. Ed.), 394-396.

■ There is no merit in the ground of demurrer that the action is barred by the statute of limitations since more than four years had elapsed between the alleged employment in 1941 and the institution of the suit on February 13, 1947. The fee for whatever services were rendered Mrs. Stapleton was not, under the allegations of the petition, payable until the estate was wound up and the administrator discharged, which discharge was effected on March 3, 1943. The statute of limitation of four years did not begin to run until the termination of the petitioner's services on March 3, 1943, when his right of action accrued, and suit would not be barred before March 3, 1947. *Cooper* v. *Claxton*, 122 *Ga.* 596 (3) (50 S. E. 399) ; *Hamby* v. *Collier*, 136 *Ga.* 309 (3) (71 S. E. 431) ; *Brooks* v. *Sims*, 54 *Ga. App.* 71, 77 (187 S. E. 254) ; Code, § 3-706.

But counsel for the defendants contends that the statute of limitations began to run at a date prior to the discharge of the administrator and that the action is barred, the argument being based upon the following allegations of the petition: Mrs. Stapleton and the petitioner agreed that, "when the estate was wound up, the administrator discharged, . . defendant, Mrs. James Stapleton, then coming into possession and control and ownership of all of said estate, would pay your petitioner a reasonable and adequate sum for his services so rendered." It is conceded by counsel that, if the expressions, "when the estate was wound up" and "the administrator discharged," had been joined by the word "and," the statute of limitations would properly be said to run from the date of the discharge of the administrator, but that the comma between the two expressions converts the words, "the administrator discharged," into a conclusion of law by the pleader, namely, that the estate was wound up when the administrator was discharged, and that the words, "when the administrator was discharged," do not themselves fix any time when payment was to be made the petitioner. It is then argued

that the allegations, properly construed, mean that payment to the petitioner would be due "when the estate was wound up," and that necessarily such time would be prior to the discharge of the administrator on March 3, 1947, for the following reasons: If, as alleged, the administrator was discharged on March 3, 1943, a prerequisite would have been an application alleging full administration and citation published once a week for four weeks under the Code, § 113-2301. Since the application must allege the completion of the duties of the administrator as necessary to his discharge, the estate must be treated as having been wound up at least four weeks prior to March 3, 1943, and as the suit was not filed until February 13, 1947, it is obvious that it comes too late. We recognize that it is axiomatic that a petition must be construed on demurrer most strongly against the pleader, but this rule should not be perverted by unwarranted and strained construction. The only fair and reasonable construction of the language here under consideration is that the pleader was setting forth an agreement that payment would be made for the petitioner's services upon two named eventualities, and this without any intention by the pleader to classify them as coincident. In other words, the allegation means, not merely that payment was to be made when the estate was wound up, in so far as administration might be complete, whenever that might be, but when that had been accomplished *and the administrator discharged.*

It is further contended that, notwithstanding the fact that the administrator was not discharged until March 3, 1947, Mrs. Stapleton was fully possessed of and in control of all the property more than four weeks theretofore and was in position to discharge her promise to pay the petitioner an adequate fee "as soon as she could get hold of sufficient funds;" that any amount due the petitioner became payable then, a date more than four years prior to the institution of the suit. One answer to this contention is that, as mentioned in one of the briefs of counsel for the defendants, these statements by Mrs. Stapleton were mere assurances that she would compensate the petitioner adequately, under the agreement made by the parties "early in the year 1941," and not an attempt to fix a new maturity date. There is no allegation that the petitioner agreed thereto, but the agreement at such time is shown immediately after such allegation, namely,

246

"Your petitioner agreed with her," etc., including the expression hereinbefore discussed, "when the estate was wound up, the administrator discharged," etc.

Furthermore, the allegations we have referred to above may be treated as surplusage in respect to the cause of action and the question of the limitation which is here raised. As shown in division 1 of the opinion, the law implies a promise upon the part of Mrs. Stapleton to pay a reasonable fee upon the completion of the petitioner's services. Those services were not really completed until the discharge of the administrator on March 3, 1943. The allegations of an agreement to pay when the estate was wound up and the administrator discharged do not show any attempt to fix a new maturity date for payment, but allege an agreement to pay at a time which had already been fixed, under an implied obligation to pay, as March 3, 1943, and add nothing to the contract.

*Judgment affirmed in part, and reversed in part on the main bill of exceptions. Judgment affirmed on the cross-bill of exceptions. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case.*