BOOTH & COMPANY *et al.* v. MOHR & SONS *et al.*

1. Since the uniform procedure act of 1887 (Civil Code, § 4937), creditors in one action may attack a sale made by their common debtor, as fraudulent, and obtain judgment against the debtor for their several demands.
2. In such an action the plaintiffs would not be entitled to the extraordinary remedies of injunction and receiver, if it appeared that an attachment against the fraudulent debtor would afford complete and adequate relief.
3. But if, in response to a prayer for injunction and receiver, on an interlocutory hearing the injunction is granted and a receiver is appointed, and the injunction is dissolved and the receiver discharged upon the defendant's execution of a bond, and no exception is taken to the interlocutory order, it is not error to subsequently overrule a general demurrer alleging that the petition is without equity.
4. Though the charge of the court may be open to criticism, yet where it appears that the substantive law necessarily controlling the case is clearly stated, and the various issues of fact raised by the pleadings are submitted in the form of questions to be answered by the jury, a new trial will not be granted where the evidence strongly supports the special findings of fact.
5. Error of the court in decreeing upon a verdict is no cause for a new trial ; and there being in the bill of exceptions no assignment of error in the decree itself, the decree is not under review.

Argued January 30, — Decided March 7, 1905.

Equitable petition.    Before Judge Kimsey.    Clinch superior court.    July 11, 1904.

L. Mohr & Sons and other creditors of R. J. Booth & Company, a partnership composed of R. J. Booth and Jessie R. Booth, instituted an equitable proceeding against that firm, Lucretia J. Booth, and the Citizens Bank of Valdosta, praying for an injunction, the appointment of a receiver, and other equitable relief. The facts alleged in the plaintiffs' petition were substantially as follows: Booth & Company had conducted a general merchandise business in the town of Argyle, during the course of which that firm became indebted to petitioners in various amounts stated. On May 5, 1903, Booth & Company, for the purpose of hindering, delaying, or defrauding creditors, made a pretended sale to Lucretia J. Booth of all the firm assets and property for the expressed consideration of $6,650, which amount she claims to have paid and which R. J. Booth admitted was in his possession on May 12, 1903, though he at the time refused to make payment of petitioners' demands. R. J. Booth is the son of his partner, J. R. Booth, who is the husband of Lucretia J. Booth. At the time of the conveyance to her of the partnership assets, she knew that the firm was largely in debt for the merchandise contained in its storehouse, and further knew that the property conveyed to her comprised all the assets out of which its creditors could be paid; and she also knew that "the purpose of said pretended sale to her was a sham and a fraud and the result of a scheme concocted between [Booth & Co.] and herself to hinder, delay, or defraud" petitioners and other creditors, and "for the fraudulent purpose of covering up and concealing the tangible assets of" that firm and enabling its members "to conceal and hide away from petitioners and other creditors the said assets and the money which she claims to have paid for the purchase thereof." The defendant partnership was solvent at the time its property was so conveyed to Mrs. Booth, but the conveyance to her rendered the firm insolvent, in that there was left in its possession no property out of which any money could be made by judgment, execution, and levy, and the object of the conveyance was to defeat plaintiffs and other creditors. The pretended sale was the result of a collusive scheme between father, son, and mother, to defeat the claims of creditors, and Mrs. Booth is now actively engaged in selling and converting into money the stock of goods. On the day of the pretended sale she paid by check

the sum of $75 on an account due one of the creditors, which payment was made in pursuance of the fraudulent scheme charged.    Prior to May 5, the defendant partnership had an account with the Citizens Bank of Valdosta and had money on deposit to its credit ; but on or about May 6, the members of the firm went to the city of Valdosta and had its bank account transferred to Mrs. Booth, in whose name the account now stands, though the money on deposit really belongs to the firm and is subject to the payment of its debts.    Unless the defendant R. J. Booth be restrained from disposing of the $6,650 which he admitted on May 12 to be in his possession, and this money be turned over to a receiver, it will not be forthcoming to pay the claims of petitioners, nor will the money on deposit in the bank, unless it be restrained from paying out the same and called on to disclose the facts concerning its transfer to Mrs. Booth.    By reason of her collusion with her husband and son, she has made herself a trustee ex maleficio for the creditors of the partnership, and has rendered herself liable to a personal judgment for the debts it owes its creditors.    Petitioners can not adequately protect and enforce their rights as creditors in any ordinary suit at common law, and to attempt to do so would result in a multiplicity of suits.

To this petition the defendants filed a general demurrer, alleging that, under the facts recited, the plaintiffs were "not entitled to maintain their said suit or to pursue the remedy and obtain the relief as sought therein."    The defendants also filed an answer, in which they denied all charges of fraud and collusion, and alleged that the sale of the property of Booth & Company to Mrs. Booth was made in good faith and she was an innocent purchaser for value.    They further answered that the sale was not made for cash, but that Mrs. Booth had given her promissory notes for the agreed purchase-price of $6,650.    On the interlocutory hearing, the court appointed a receiver and granted the injunction prayed for, but its order was subsequently vacated upon the defendants giving bond.    At the trial term of the case the court overruled the demurrer to the petition, which had previously been amended by adding a prayer that the promissory notes alleged to have been given by Mrs. Booth, which were negotiable, be impounded in court until its final decree, and judgment thereon be then entered up against her, and that R. J. Booth and J. R.

Booth be in the meantime restrained from disposing of said notes. To the overruling of the demurrer the defendants excepted pendente lite. The case was then tried on its merits, upon the petition and answer and certain interventions which had been interposed by other creditors of Booth & Company. The jury returned a special verdict, on written questions submitted for their determination; and on this verdict the court entered up judgment against all the defendants save the Citizens Bank, which was merely a nominal party and had been dismissed from the case. The defendants thereafter made a motion for a new trial, which, after being amended at the hearing thereof, was overruled. Upon the overruling of their demurrer and the refusal of the court to grant a new trial they assign error.

J. L. Sweat and R. G. Dickerson, for plaintiffs in error.
Jacob Gazan, Simon W. Hitch, and Wilson & Rogers, contra.

EVANS, J. (After stating the facts.) 1–3. The demurrer was general. Before the passage of the uniform procedure act of 1887, which is codified in the Civil Code, § 4937, a creditor without a lien, under ordinary conditions, could not first maintain an action to set aside a fraudulent conveyance of his debtor. See Haralson v. Newton, 63 Ga. 163; Comer v. Coates, 69 Ga. 491; Stephens v. Whitehead, 75 Ga. 297. The act of 1887, however, made a great innovation in the law, and now a suitor in the same action may join legal and equitable causes and obtain appropriate relief. Creditors in one suit may proceed for judgment on their debts and to set aside fraudulent conveyances made by their common debtor. DeLacy v. Hurst, 83 Ga. 223; Vaughn v. Georgia Loan Co., 98 Ga. 288. No additional grounds for the invocation of the extraordinary powers of a court of equity was thereby created, and extraordinary remedies are not available in cases where they were not applicable before the passage of the act. Broomhead v. Grant, 83 Ga. 451; Stillwell v. Savannah Grocery Co., 88 Ga. 144. Where creditors by petition seek to obtain judgment on their several demands against their common debtor, and to set aside fraudulent sales and subject the subject-matter thereof to the judgments sought, and pray for an injunction and receiver, these extraordinary equitable remedies will not be granted if the petition discloses that the

plaintiffs have a complete and adequate remedy at law. *Johnson* v. *Gilmer*, 113 *Ga.* 1146. In the case under consideration, it would appear that the plaintiffs were amply protected by their common-law remedy of attachment against the fraudulent debtor. When this question was before the judge on the interlocutory hearing, the defendants should have urged their objection to the exercise of the extraordinary equitable powers which the plaintiffs invoked in their petition. If such objection was made and overruled by the court, exception should have been taken to the interlocutory order. If, instead of excepting to the interlocutory order granting an injunction and appointing a receiver, the defendants, agreeably to the order, dissolved the injunction and discharged the receiver by giving the bond provided for in the order, and subsequently, at the appearance term, filed a general demurrer to the petition, the general demurrer only raised the question of the right of the plaintiffs to prosecute their action for judgment on their demands and for cancellation of the fraudulent conveyances. The execution of the bond, without exception to the interlocutory order, was an acquiescence in the power of the court to pass such order; so the only question presented by the general demurrer was whether, upon the allegations made in the petition, the plaintiffs were entitled to judgment against their common debtor and to a decree setting aside the conveyances alleged to be fraudulent. This feature of the case was identical with the case of *DeLacy* v. *Hurst*, supra, where it was held that a petition of this kind was not demurrable for want of equity. To the same effect, see *Conley* v. *Buck*, 100 *Ga.* 187 ; *Kruger* v. *Walker*, 111 *Ga.* 383 ; *Rodgers* v. *Stern & Co.*, 112 *Ga.* 624 ; *Evans* v. *Piedmont Building Assn.*, 117 *Ga.* 944, and cases cited.

4. The debtors sustained the relation of father and son. The vendee was the wife of one and the mother of the other. A few days before the institution of plaintiffs' suit, R. J. Booth & Co. by deed conveyed to Mrs. Booth a lot of land, a town lot, stock of merchandise and all notes and accounts, and seventy-five bee-hives, upon an alleged consideration of $6,650. On the same day the senior member of the firm conveyed to Mrs. Booth, upon an alleged consideration of $750, certain town lots in Argyle, two mules, and farm implements. These two conveyances completely divested the firm of Booth & Co. of all property. The consider-

ation was Mrs. Booth's notes for the amount of the alleged pur-chase-money. The firm of Booth & Co. was much involved, and the circumstances indicated Mrs. Booth's knowledge of its finan-cial condition. When the sale was made, it does not appear that the usual commercial stock-taking was had, but values were agreed upon in round figures. It does appear that when the terms of the trade had been agreed on, the parties were cautious to have an attorney to prepare the necessary transfers of title. Enough of the facts has been stated to show that this was a trans-action between near relatives, and that the jury could infer that the sale was made with intent to hinder and delay creditors, and the purchaser either knew or had reasonable grounds to suspect such intention. The charge of the court on the substantive law applicable to the case was free from material error, and any minor inaccuracies will not be ground for a new trial. This is espe-cially true as the court submitted to the jury questions which em-braced every material issue in the case, and the special findings of fact were strongly supported, if not demanded, by the evidence. The failure of the jury to answer the final question will not vitiate the verdict, as the other questions comprehended all the issues, and this was but a repetition of some of the others. The answers to the preceding questions necessarily answered this last one.

5. In the last ground of the motion for a new trial, complaint is made that under the verdict the decree was unauthorized. No error in the decree was assigned in the bill of exceptions. "Error of the court in decreeing upon a verdict is no cause for a new trial, and there being in the bill of exceptions no assignment of error in the decree itself, the decree is not under review." *Denham* v. *Walker*, 93 *Ga.* 497 (5).

<div style="text-align:right">

*Judgment affirmed. All the Justices concur.*