44908.   REGISTER et al. v. STONE'S INDEPENDENT OIL DISTRIBUTORS. et al.

Argued January 8, 1970—Decided July 13, 1970—
Rehearing denied July 30, 1970—

*Martin, Snow, Grant & Napier, George C. Grant,* for appellants.

*Adams, O'Neal, Steele, Thornton, Hemingway & McKenney, H. T. O'Neal, Jr., Harris, Russell & Watkins, Joseph H. Davis,* for appellees.

EBERHARDT, Judge. ■ The issue is squarely raised as to whether the impleading of a third-party defendant under CPA § 14 (a) (*Code Ann.* § 81A-114 (a)) is an ancillary proceeding with its venue resting upon that of the main action, or whether it is separable and distinct from the cause of action between the plaintiff and the defendant in the main action and is essentially an independent "suit" or "case" so that it must satisfy within itself the venue requirements of our Constitution, Art. VI, Sec. XIV (*Code Ann.* § 2-4901 et seq.).[1] Since the claim for contribution asserted against the third-party defendants does not fall within one of the exceptions enumerated in the Constitution (*Code Ann.* §§ 2-4901— 2-4905), and since CPA § 82 (*Code Ann.* § 81A-182) provides that "This Title shall not be construed to extend or limit the jurisdiction of the courts or the venue of actions therein," the venue requirements of the Constitution (*Code Ann.* § 2-4906) are not met with respect to these nonresident third-party defendants unless their impleading is an ancillary proceeding to the main action rather than a "suit" or "case" within the meaning of those terms as employed in the previously-cited constitutional provisions. In this connection it should be noted that the fact the third-party defendants could be joined as original defendants by the plaintiff under the joint-tortfeasor venue provision of the Constitution (*Code Ann.* § 2-4904) is not determinative of the matter, contrary to the trial court's reasoning. If the claim asserted against co-defendants or third parties is essentially independent rather than

[1]See Norman, The Georgia Civil Practice Act: Counterclaims, Cross-Claims and Third-Party Practice, 4 G. S. B. J. 355, 379, a comprehensive article dealing with the question here involved.

one ancillary to the main action, it must satisfy within itself the constitutional venue requirements. Cf. *Barnes v. Banks,* 154 Ga. 706 (115 SE 71); *Huckabee Auto Co. v. Norris,* 190 Ga. 515 (9 SE2d 840, 129 ALR 913); *Terhune v. Pettit,* 195 Ga. 793 (25 SE2d 660). But see *Roberts v. McBrayer,* 194 Ga. 606 (22 SE2d 165). See also *Carswell v. Macon Mfg. Co.,* 38 Ga. 403; *Dawson v. Equitable Mortgage Co'.* 109 Ga. 389, 392 (34 SE 668); *Fourth Nat. Bank v. Mooty,* 143 Ga. 137 (84 SE 546).

What, then, is an ancillary proceeding? It is one growing out of or auxiliary to another action or suit, or which is subordinate to or in aid of a primary action, either at law or in equity. See Black's Law Dictionary, "Ancillary," "Ancillary Bill or Suit," "Ancillary Proceeding" (4th Ed. 1957). An example is the use of a garnishment proceeding which, even though considered to be a distinct suit against a separate party on a new cause of action, is denominated "ancillary to the main action." *Dent v. Dent,* 118 Ga. 853 (45 SE 680). Thus in *Huron v. Huron,* 1 T. U. P. Chrlt. 160, "returns were made by garnishees residing in different counties, and upon motion of Davis and Berrien to enter up judgment against them for the amount of their returns, it was objected by Harris, for the garnishees, in arrest of this motion, that the third section of the attachment law was unconstitutional,[2] because no person could, (except in the case of joint obligors) be sued out of the county in which he resided: and these garnishees resided in the County of Richmond [while the motion for judgment was made in the pending action in the Chatham County Court]." The objection was overruled, the court stating: "The Constitution directs, that the party shall be sued in the county where he resides; but this constitutional privilege applies to original actions which clearly designate the parties, plaintiff and defendant. It does not interfere with those incidental remedies, which necessarily result from the exigencies of the original action. . . The attachment served upon [the garnishee] is therefore incidental, or auxiliary to the original action, and does not fall under the constitutional privilege given to defendants."

---

[2]Statutory changes make summons of garnishment returnable to the court of the county in which the garnishee resides. *Code Ann.* §§ 46-603, 46-604; *Williams v. Smith,* 169 Ga. 136 (149 SE 908).

Similarly, in *Garvin v. Gallagher,* 1 Ga. 315,[3] Gallagher sued Walsh in Muscogee Superior Court, and upon his being arrested Garvin became his bail. Judgment was obtained against Walsh and execution against his body was issued, which was returned that he was not to be found. A writ of scire facias was then sued out, directed to the Sheriff of Bibb County, where Garvin resided, requiring him to appear and show cause why Gallagher should not have execution against him for the amount due on the judgment. Garvin moved to quash the scire facias on the grounds, inter alia, that he was a resident of Bibb County in which county alone he was liable to be sued and compellable to answer. The Supreme Court affirmed the overruling of this ground, stating: "We do not think scire facias against bail is such an *original suit* as was contemplated by the Constitution. The original suit in our judgment gave the court jurisdiction to proceed against the bail, being part of the proceedings which appertain to the original suit." P. 316.

Perhaps one of the best examples of an ancillary proceeding is to be found in the vouchment of another to defend an action. An exhaustive discussion of this by Judge Powell is found in *McArthor v. Ogletree,* 4 Ga. App. 429 (61 SE 859). When the vouchee has been properly notified he may come in and defend, or he may refrain—but in either event he is bound by the result, as to the right of the plaintiff to recover and as to the amount. *Code* § 38-624. That proceeding, of course, requires the bringing of a second action to determine the liability over of the vouchee to the voucher since there is no procedural device available whereby the vouchee's liability over can be determined in the plaintiff's action against the voucher. It is interesting to note that Professor Moore, in tracing the historical background of Fed. Rule 14, from which our CPA § 14 was taken, states that although impleader is a relatively recent procedural device in many American jurisdictions, its roots go deep into the common law, striking and penetrating the

[3]Overruled in *Dickinson v. Allison,* 10 Ga. 557, insofar as it may conflict with that decision. *Dickinson* held that a scire facias to revive a dormant judgment is not an "original action" to which the constitutional venue provision applied but is a continuance of the suit in which the judgment was rendered.

vouching procedure. 3 Moore, Federal Practice 431, § 14.02 [1] (2d Ed. 1967). He goes on to point out that impleader is in great measure an effective extension of vouchment, and that the latter did not require independent jurisdictional grounds for vouching the third party into the pending action. 3 Moore, supra, pp. 683, 685, § 14.25. This is the rule in this State, for it has never been thought that independent venue or jurisdictional grounds were required over the vouchee to conclude him as to the right of the plaintiff to recover and as to the amount. Only notice was required, and thus venue or jurisdiction over the vouchee was not fundamental but ancillary to the main cause.

While the question is not free from difficulty, we conclude that, as urged by Professor Moore in the first edition of his treatise (see 3 Moore, supra, pp. 683, 685), the third-party claim under CPA § 14 should be regarded as an ancillary claim by analogy to other types of claims, particularly to vouchment which is the ancestor of third-party practice. (This position is reasserted in the second edition; see 3 Moore, supra, pp. 683, 701, §§ 14.25, 14.26). Although vouchment necessitated the bringing of a second action, this appears to be a result of the *procedural* inadequacy of the vouchment proceeding itself and not of a constitutional command. CPA § 14 affords a new *procedural* remedy whereby the *procedural* necessity of maintaining the second action is eliminated; and if the vouchee traditionally could be concluded as to the plaintiff's right to recover and the amount thereof, and no independent venue or jurisdictional grounds were required to bind him as to these two fundamental elements, it slices the salami too thin to hold that he cannot also be bound as to the third element—his liability over to the original defendant—in the same action. Under the procedure made available by CPA § 14, an original defendant may implead a third person who is or may be liable to him for all or part of the plaintiff's claim against him. This procedure is utilized here to claim contribution from joint tortfeasors under Ga. L. 1966, p. 433 (*Code Ann.* § 105-2012), and an attempt is thus made to pass on to the third parties a part of the liability asserted against the original defendants. The impleaded joint tortfeasors cannot be liable on any judgment entered against the original defendants, and they can only be liable over to the third-party plaintiffs on a

conditional judgment for their share of any judgment which may be entered against the third-party plaintiffs and paid by them. See 3 Moore, supra, p. 574, § 14.11; Norman, supra, p. 371. Thus no independent claim is made by the third-party plaintiffs against the third-party defendants, but only a claim for contribution in the event the third-party plaintiffs are held liable. This claim is contingent upon the outcome of the main case and is ancillary to it, and it cannot properly be regarded as a "suit" or "case" within the meaning of the venue provisions of our Constitution.

A comparison of the instant case with cases such as *Barnes v. Banks*, 154 Ga. 706, *Huckabee Auto Co. v. Norris*, 190 Ga. 515, and *Terhune v. Pettit*, 195 Ga. 795, supra, illustrates the distinction between ancillary and dependent claims and those which are separable and distinct from the main action and are essentially independent claims subsisting between the original defendant and the third person. In the cited cases the original defendants, who attempted unsuccessfully to maintain "cross petitions," etc.,[4] against nonresidents of the county where the main action was pending, sought to adjudicate subsisting controversies which were not dependent upon the main action. In *Barnes*, an action by a transferee on promissory notes given for the balance of the purchase price of machinery, the defendant makers of the notes filed a "cross petition" alleging breach of warranty, failure of timely delivery, and misrepresentation on the part of the nonresident payees-sellers in regard to the sale of the machinery, and sought judgment against them for the purchase money paid and for damages. Similarly, in *Huckabee*, the plaintiff transferee of a promissory note sued the maker, who in turn filed an "answer in the nature of a cross action" against the nonresident payee, claiming that the payee-seller had made misrepresentations of an automobile for which the notes were given in part payment. The maker alleged that after discovering the misrepresentations he took the automobile back to the payee-seller and offered to rescind the trade upon the seller restoring to him his old automobile which had been traded in as part payment, but that the seller refused

---

[4]These cases were decided before CPA § 14 made available the procedural device of impleader.

and transferred the note. The defendant maker prayed judgment against the payee-seller in an amount equal to that which the transferee obtained against him, and in addition sought recovery of $450, the value of the automobile he traded in. In these cases, it seems apparent that the makers-buyers were attempting to assert subsisting claims against the nonresident payees-sellers which were maintainable irrespective of suit on the notes by the transferees, and they were not situations where the makers asserted merely that the payees were secondarily liable to them on the notes. In *Terhune,* an action at law for damages representing the value of stock, the defendant company holding it filed an answer "which was a petition for interpleader," praying for injunction against a nonresident and that he be required to interplead with plaintiff. Again this is not a "liable over" situation but an independent action brought to a head by the advent of suit by one of the claimants. In contrast to the claims asserted by defendants in these cases, which would have been maintainable by them as original plaintiffs in independent actions even though no suit were ever brought against them, the third-party claim in the instant case depends for its very existence upon the main case. As alleged in the third-party complaint: "These third party plaintiffs have a right of action against the third-party defendants and said third-party defendants are or may be liable over to these third-party plaintiffs under the following conditions: if the plaintiff obtains a verdict and judgment herein against these third-party plaintiffs, the said third-party defendants are liable over to these third-party plaintiffs for a pro rata share of said verdict and judgment, the exact amount depending upon the amount of verdict and judgment and against whom such is returned and entered." Had suit never been brought against these third-party plaintiffs, or were the suit against them to be dismissed, or were judgment to be finally entered in their favor, no basis would exist for prosecution of their claim against the third-party defendants. This is a true case of impleader—an attempt to pass on to the third-party defendants part of the very same liability asserted against the third-party plaintiffs in the main action, with no other items of recovery being sought, as there was in *Barnes* and *Huckabee,* supra. Hence the third-party claim here has no such inde-

pendent status that it can be classified as a "suit" or "case" within the meaning of our constitutional venue provisions, and accordingly those provisions have no application here.

The question we decide here, though one of first impression in this State, is not novel. Under Fed. Rule 14, the Federal courts were likewise faced with problems of jurisdiction and venue in relation to third-party practice. For example, assume that in a diversity case A, a citizen of State 1, sues B, a citizen of State 2, in A's district in State 1. B then impleads C, also a citizen of State 2. There is thus no diversity between B and C and, unless ancillary, the third-party claim runs afoul of the limitation on the jurisdiction of the Federal courts. Similarly, if C is a citizen of State 3, there is then diversity between B and C so as to supply independent jurisdictional grounds, but, unless ancillary, the claim will fall on C's venue objection. See Moore, supra, p. 684. The Federal courts, however, adopted the view that the third-party claim should be regarded not as an independent claim, but as one ancillary to the main claim, and that no independent venue or jurisdictional grounds were required. Moore, supra, p. 703, n. 6; p. 743, n. 4; 1A Barron & Holtzoff, Federal Practice and Procedure, p. 650, § 424; Annots., 37 ALR2d 1420, § 6; 100 ALR2d 708, § 9.

What we hold here is not to be construed as meaning that an original defendant may assert independent claims he may have against a nonresident third party under the guise of ancillary impleader. To come under this ruling, which deals with impleader only, the claim asserted by the original defendant must be a truly ancillary third-party claim. Texas, which subscribes to the ancillary proceeding view in regard to impleader *and* cross actions in order to prevent a multiplicity of suits, even though its venue provisions appear more restrictive than our own, recognizes the distinction between claims ancillary to the main action and those which are separable and distinct from it and are essentially independent claims existing between the original defendant and the third person. See Annot., 100 ALR2d 715 et seq. Our holding here is that in cases of truly ancillary impleader, such as in cases of indemnity, suretyship, contribution, subrogation, and breach of warranty, the third-party proceeding is not an essentially indepen-

dent "suit" or "case" so that it must satisfy within itself the previously-cited venue requirements of our Constitution.

Enumerations of error 1, 2, 5 and 6 are without merit.

2. Third-party defendants urge that the complaint cannot be maintained against them because there is no specific allegation that the third-party plaintiffs and third-party defendants were joint tortfeasors with respect to the occurrence for which the original action was commenced, but that the allegations seek to place the entire blame upon Rodgers and third-party defendants.

This contention is without merit. A third-party complaint is subject to the notice-pleading provisions of CPA § 8 (a) (*Code Ann.* § 81A-108 (a)) and need only contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled." The complaint should, of course, show the basis upon which the original defendant claims that the third-party defendant is liable to him for part or all of the original plaintiff's recovery. 2 Kooman, Federal Civil Practice 227, § 314.03 (1969); 1A Barron & Holtzoff, supra, p. 697.

Without attempting to set forth the numerous recitations and allegations of the motion to bring in the third-party defendants and the third-party complaint, suffice it to say, as did the trial court, that "it cannot be held as a matter of law upon consideration of the language of the third-party complaint that the third-party defendants are not contended to be joint tortfeasors with the third-party plaintiffs." It is clear that the basis of the claim is for contribution from joint tortfeasors, and the pleading is sufficient. Carlisle v. S. C. Loveland Co., 175 F2d 418 (CA 3); Mendenhall v. Texas Co., 15 F. R. D. 193 (D.C. Pa.). In any event we do not conceive that CPA § 14 requires an admission of liability in order for its provisions to be available. The further allegations that Rodgers and the third-party defendants were solely responsible for the injuries is mere surplusage. Sheppard v. Atlantic States Gas. Co., 167 F2d 841 (CA 3).

*Central of Ga. R. Co. v. Lester,* 118 Ga. App. 794 (165 SE2d 587) does not require a different result, for there and in the Federal case we relied upon the proposed third-party defendant could not be made liable over on the theory it was a joint tortfeasor

because it was the employer of the original plaintiff and subject to the Workmen's Compensation Act.

Enumerations of error 3 and 7 are without merit.

3. The final contention is that there were two collisions, the first involving Rodgers and the second involving third-party defendants, and that these successive collisions may not have produced a single injury. Thus it is argued that third-party defendants were not joint tortfeasors with either Rodgers or third-party plaintiffs.

However, it is not possible at this juncture to determine whether or not third-party plaintiffs and third-party defendants were, in fact, joint tortfeasors. As the trial court observed, it cannot now be held that the tort alleged to involve the third-party defendants is necessarily a different tort from that alleged to involve the third-party plaintiffs, but this is a matter that addresses itself to factual proof. "There must, of course, be some showing that under the applicable law the third party *may* be liable to the defendant. However, the allegations of the third-party complaint need not show that recovery is a certainty; the complaint should be allowed to stand if, under some construction of the facts which might be adduced at trial, recovery would be possible." 3 Moore, supra, p. 554.

Enumerations of error 4 and 8 are without merit.

*Judgment affirmed. Bell, C. J., Jordan, P. J., Hall, P. J., Deen, Quillian and Whitman, JJ., concur. Pannell and Evans, JJ., dissent.*

PANNELL, Judge, dissenting. I disagree with the conclusion reached by the majority that a "third-party" claim under Section 14(a) of the Civil Practice Act is necessarily "ancillary" to the main suit so that the venue of the main suit attaches thereto. Section 82 of the Civil Practice Act (*Code Ann.* § 81A-182) specifically provides that nothing in that Act *shall be construed to extend* or limit *the jurisdiction* of the courts or *the venue* of the actions therein. And even if the intent of the Act had been to extend the venue of the courts in third-party complaints under Section 14 of that Act (*Code Ann.* § 81A-114), the statute could not change or alter in any way the venue provisions of the Constitution of this State contained in Article VI, Section XIV, Paragraphs

I through VI (*Code Ann.* §§ 2-4901 through 2-4906). "No legislative or judicial tinkering can add to, take from, or vary" these provisions. *Harvey v. Atlanta &c. Nat. Bank,* 164 Ga. 625, 626 (139 SE 147); *Terhune v. Pettit,* 195 Ga. 793 (25 SE2d 660). These provisions are "mandatory, and cannot be altered by legislative enactment or any rule of construction." *Bradley v. Burns,* 188 Ga. 434, 435 (4 SE2d 147). "The right conferred by the Constitution and the Code, that legal proceedings must be brought in the county of the residence of the defendant, is a substantial right." *Danziger v. Shoob,* 203 Ga. 623, 626 (48 SE2d 92). It is obvious, therefore, that the decision in this case does not depend upon any provisions or terminology of the Civil Practice Act, or the decisions as to jurisdiction and venue in the Federal district and circuit courts of appeal, but can be determined very readily by applying the law of the State of Georgia as to the venue of civil actions as it was before the Civil Practice Act was passed and as it still is after the passage of that Act.

Neither are we concerned here with the question of the desirability of extending or limiting the venue provisions of the Constitution so as to make the third-party practice more effective as has been so often suggested by the writers of articles and textbooks. Changing the Constitution is not the function of this court, but is rather the function of the electorate by adopting applicable constitutional amendments presented to them in the manner provided in the Constitution.

Section 14 (a) of the Civil Practice Act (applicable to all courts of record) is as a whole nothing new to our procedure as "a defendant to any suit or claim in the superior court, whether such suit be for legal or equitable relief, may claim legal or equitable relief, or both, by framing proper pleadings for that purpose, and sustaining them by sufficient evidence" (*Code* § 37-905), although primarily these rights were asserted in the superior court which had jurisdiction of equity matters and all necessary parties could be made by amendment (*Code* § 37-1005) and equitable relief could be secured by amendment (*Code* § 37-903) and any person claiming equitable relief could obtain the use of extraordinary remedies in aid thereof (*Code* § 37-904). Section 14 (a) of the Civil Practice Act relating to third-party actions and Section 13 (g) re-

lating to cross claims against a co-party do, however, make a procedural change by asserting that such cross claims or cross complaints may be brought against a party "who is or may be liable to" the cross complainant or third-party plaintiff for all or part of the claim asserted in the main action against such cross complainant or third party plaintiff. It is now no longer necessary that the third-party plaintiff tortfeasor have a judgment rendered against him and pay a part thereof before proceeding against the other joint tortfeasor for contribution. Under the third-party procedure invoked in the present case, the other joint tortfeasor can be made a party *prior* to such recovery against the first and payment of the judgment by the first.

The emphasis by the majority is put upon the contention that the third party action here is "ancillary" to the main case and the constitutional provisions as to venue do not apply to it; relying almost entirely on lower court Federal cases and circuit courts of appeal Federal cases (the Supreme Court has not yet passed on the question; see Annotation 100 ALR2d 693, 705), which have no application to our Georgia constitutional provisions as to venue. On this theory that the "ancillary" nature of the proceeding eliminated the constitutional requirements as to venue the majority opinion must stand- or fall.

The third-party action here involved neither meets the definition of an ancillary proceeding set forth in the majority opinion nor is it the type of "ancillary" proceeding in which the courts of this State permit the venue to attach to the main suit without a separate application of the venue provisions of the Constitution of this State. The third-party complaint here does not grow out of the main action, although the proof in the main action may be sufficient proof to support the third-party action; nor is it subordinate to or in aid of the action in the main case.

Merely because a proceeding in a case may be "ancillary" to the main case under the Georgia decisions carries no magic repeal of the provisions of the Constitution of this State that one must be sued in the courts of the county of his residence (*Code Ann.* §§ 2-4906, 3-202) nor does it necessarily prevent the application of the constitutional provisions as to venue where the party defendant in the ancillary proceeding is a nonresident of the county in which

the main case is pending, nor does the fact that the proceeding is "ancillary" prevent the application of the constitutional provision that equity cases must be brought in the county where a defendant resides against whom substantial equitable relief is prayed (*Code Ann.* § 2-4903). It has been so decided by the Supreme Court of this State, as will be hereinafter shown. I will be the first to admit, however, that a certain type of "ancillary" proceeding was at one time permissible without the application of the constitutional requirements as to venue separately thereto. In this area lies the difference. The majority seeks to expand this area by permitting "ancillary" proceedings without a separate requirement as to venue, which has heretofore not been permitted. It may illuminate the question somewhat by discussing those cases and the history of constitutional provisions relating to venue.

Prior to the amended Constitution adopted in 1861, there were no constitutional provisions as to venue specifically referring to equity causes (*Railroad Commission v. Palmer Hardware Co.,* 124 Ga. 633, 639 (53 SE 193)), although the Constitutions of 1777 and 1789 had provisions relating to "matters in dispute" and "causes" being tried in the county where the defendant resides, except real estate, which shall be tried in the county where the real estate lies, and the Constitution of 1798 first made provision in cases of joint obligors and joint promisors. *Code Ann.* § 3-202, relating to equitable proceedings, was an adoption of case law prior to the constitutional provisions relating to venue in equity cases. See *Carswell v. Macon Mfg. Co.,* 38 Ga. 403, 406. By analogy to the law, equity cases were brought in the county where a defendant resided against whom substantial equitable relief was sought, and this requirement was placed in the Constitutions of 1861, 1865 and 1868, but it was ruled, however, these venue provisions of the Constitution in equity cases did not apply to bills "ancillary" to suits already pending, "as for discovery, injunction, etc. In such causes, *so far as the bill is merely defensive, and seeks no relief, outside of the suit pending,* the county where the suit is pending has jurisdiction." (Emphasis supplied.) *Carswell v. Macon Mfg. Co.,* 38 Ga. 403, 407, supra. It appears, therefore, that the "ancillary" proceedings to which the ordinary venue provisions of the Constitution do not apply, are considerably more restricted, and

quite different from the "ancillary" proceedings defined in the majority opinion. Decisions of the Supreme Court of this State conclusively show this.

I quote from the case of *Bishop v. Brown,* 138 Ga. 771 (2-4) (76 SE 89): " 'Equity cases shall be tried in the county where the defendant resides against whom substantial relief is prayed.' Civil Code, § 6540 [*Code Ann.* § 2-4903]. *Ancillary proceedings may be filed in cases growing out, and in aid of the original proceedings,* in the same court and between the same parties, for the purpose of rendering complete justice among all the parties at interest. In such a case, *however, an ancillary proceeding in the nature of an equitable petition to cancel a deed* (and to enjoin the transfer of the property) alleged to have been made by a judgment debtor to his wife in order to hinder, delay, and defraud his creditors, *will not lie against the wife in a county other than that of her and her husband's residence,* where it appears that she was not a party to the original suit in the county where the judgment was obtained, and has not waived jurisdiction in the court of the county other than that of her residence by any act on her part." The case of *Barnes v. Banks,* 154 Ga. 706 (115 SE 71), cited in the majority opinion, and summarily distinguished on the ground it did not involve an "ancillary" proceeding is a case in which it appeared A and B purchased machinery from C and D and gave several notes for the balance of the purchase money which were indorsed by C and D to a bank. The bank sued the makers A and B and the indorsers C and D, the indorsers C and D being nonresidents of the county of the suit. The makers A and B answered and also filed a "cross petition" (third-party complaint), alleging there was a breach of warranty on the part of the indorsers in that the machinery purchased was not as represented and was not reasonably suited for the purpose intended, etc., and a judgment was sought against the indorsers by the makers for the amount of the purchase money already paid and for damages. The ruling of the court was as follows: "This 'cross petition' was dismissed upon motion of the indorsers, on the ground, among others, that the Superior Court of Jones County had no jurisdiction to entertain such an action as set out in the 'cross petition' against them, as neither of them resided in that county. *Held,* that the court did

not err in dismissing the 'cross petition.' Under the Constitution an action must be brought in the county of the defendant's residence, and neither of the indorsers, who were the defendants in the 'cross petition,' resided in Jones county. While they could be sued there with the makers of the notes, because they were joint obligors, the makers could not maintain in that county the 'cross petition' against them." In this case, the third-party defendant was already the defendant in the main action.

Another case cited by the majority also summarily distinguished on the grounds that the third-party action involved was "independent rather than one ancillary to the main action," is *Huckabee Auto Co. v. Norris,* 190 Ga. 515 (9 SE2d 840). In that case, it appeared that Norris bought from Huckabee Auto Company an automobile and gave in part payment a note. The note was transferred to General Motors Acceptance Corporation which, upon Norris' refusal to pay the note, brought an action against him in the Superior Court of Twiggs County. In his answer, Norris set up various representations made by Huckabee Auto Company, alleging it to be a resident of Bibb County, Georgia, and relating to the automobile and that immediately after he took the automobile home he saw it was not as represented and he took it back to Huckabee Auto Company and offered to rescind the trade, but that Huckabee Auto Company refused and then transferred the note to General Motors Acceptance Corporation. He pleaded that he might not be able to make a good defense against the plaintiff "*and therefore that Huckabee Auto Company was liable to him for whatever judgment the General Motors Acceptance Corporation might obtain against him.*" The court, following the reasoning in *Barnes v. Banks,* 154 Ga. 706, supra, said (p. 516): "under the procedure which obtains in this State, *it is permissible for a defendant sued at law to file such pleadings as will convert the case to one in equity; and new parties may be made in equity cases* [and in law cases under the Civil Practice Act]. *But neither of these two propositions, nor both of them combined, will authorize an action in a forum forbidden by our Constitution.*" (Emphasis supplied.) The trial judge was reversed for his failure to dismiss the cross complaint or third-party action against Huckabee Auto Company, which motion was made on the ground of lack

of venue of the Huckabee Auto Company, which was a resident of Bibb County, Georgia.

This case to me appears to be on all fours with the present case in which the third-party plaintiffs seek to have alleged joint tort-feasors (joint with the third-party plaintiffs) made third-party defendants who allegedly "may be liable over to these third-party plaintiffs" and "prays judgment against the third-party defendant for the legally determinable pro rata amount of any recovery that the plaintiff may obtain against these third-party plaintiffs . . ." If there be a difference, where is it?

The majority seek to distinguish *Barnes v. Banks,* supra, and *Huckabee Auto Co. v. Norris,* supra, on the grounds (a) already stated (that they did not involve an ancillary, or third-party practice, proceeding) and (b) that when those cases were decided, we did not have the "procedural device" permitting the making of such third parties, and (c) that in *Barnes* and in *Huckabee* other items of recovery were sought than the action for recovery of contribution. These distinctions are obviously without merit.

I will demonstrate this in the order stated. (a) That the actions over involved warranties is even conceded in a part of the majority opinion to be matters comprehended within the third-party practice. With this we agree. And if the majority contends the third-party practice involves "ancillary" proceedings, then ancillary proceedings were involved in *Banks* and in *Huckabee* according to the majority's own standards of definition.

(b) We have previously shown that "procedural devices" were in effect when *Banks* and *Huckabee* were decided and, further, *Huckabee* contains within its opinion a refutation of the majority's distinction (which refutation has been previously emphasized in this opinion). In that opinion attention is called to the fact that two so-called "procedural devices" were in effect permitting the making of parties. It was then ruled (p. 516): "But neither of these two propositions [procedural devices], nor both of them combined will authorize an action in a forum forbidden by our Constitution." To the same effect is the case of *Fourth Nat. Bank v. Mooty,* 143 Ga. 137 (84 SE 546), cited by the majority. We quote from the opinion in that case as follows: *"The Uniform Procedure Act of 1887, permitting the joinder of legal and equitable causes, and obtaining*

*appropriate relief in the same action, did not change any essential feature of the law respecting the venue of actions.* Before its passage a creditor without a lien, under ordinary conditions, could not first maintain an action to set aside a fraudulent conveyance of his debtor; but since its enactment a creditor, in one action, may attack a sale made by his debtor as fraudulent, and obtain judgment against his debtor for the debt. *Booth v. Mohr,* 122 Ga. 333 (50 SE 173). This does not mean that a creditor without a lien may go out of the county of his debtor and institute an action against the debtor's grantee, in the county of the latter's residence, for the purpose of obtaining judgment against his nonresident debtor and subjecting to its lien property which it is alleged the debtor fraudulently conveyed to his grantee. A creditor may sue his debtor in the county of the latter's residence, and in the same action (if it be in a court which has equitable jurisdiction) may have equitable relief in canceling his debtor's fraudulent deed, although the grantee may reside in a different county. The jurisdiction of the court having equitable jurisdiction draws to its power of rendering judgment against the debtor the power of administering proper ancillary equitable relief. It is not the power to render the ancillary relief which fixes the jurisdiction of the court over the person, but, rather, the jurisdiction over the person to render judgment includes the jurisdiction to grant ancillary relief appropriate to the enforcement of the judgment to be obtained in the same action. The plaintiff's right to cancellation is dependent upon his right to a judgment against his debtor who lives in Fulton County. The Uniform Procedure Act of 1887 did not provide that a creditor could go out of the county of the debtor's residence and obtain a judgment, and ancillary relief against him, but that simultaneously in his action for a judgment, in the county of the debtor's residence, he could join therein a supplementary cause of action for equitable aid in the enforcement of his judgment." (Emphasis supplied.)

(c) While, in both *Barnes* and *Huckabee,* other items of recovery were sought other than the action for recovery of contribution, and this constitutes a *difference* in those cases and the one before the court, it constitutes no distinction. The inference in making this distinction is that these cases were dismissed because there

was no venue as to the items sought to be recovered outside of the recovery for contribution. It is obvious by reading the cases that they were dismissed because there was no venue as to any of the items for which recovery was sought, and if there had been venue for the recovery of contribution, the whole case would not have been dismissed. This is demonstrated in the case of *Etowah Milling Co. v. Crenshaw,* 116 Ga. 406 (42 SE 709) where there was a suit for equitable relief and damages against a corporation. The residence fixed by charter was in a county different from that of the suit. The court dismissed the equity portion of the case on grounds of lack of venue, but entertained that portion embracing a claim for damages, as the corporation by statute was a "resident" of the county where the wrong or injury for which damages were sought occurred.

Let us examine the authorities on which the majority rely in saying that the present third-party complaint is not an action or case covered by the constitutional provisions relating to venue. It is clear that we have a plaintiff and a defendant in the ordinary and usual sense of the term and that the action brought by the defendant party against another not a party to the case is not one in aid of the main case or action or one growing out of it even though "ancillary" thereto. That the third-party plaintiff has no right to recover against the third-party defendant unless and until a recovery is had in the main action and payment made thereon does not make the third-party action here one "growing out of" the main case. On the contrary, these requirements are but a condition precedent to a right of action for contribution. While we have a procedural device now for making a joint tortfeasor a party to the main case, this has not changed the nature of the action ultimately sought to be asserted against the joint tortfeasor for contribution. The majority rely on cases holding that a garnishment proceeding is not a case or suit within the meaning of the constitutional provisions and seem to get comfort from the statement in a case that the garnishment is "ancillary to the main case." A garnishment proceeding is ancillary to the main action in the sense that it is an attempt to enforce the judgment obtained in the main action in behalf of the *plaintiff* in the main action. However, as we have shown, merely being "ancillary" is not a

controlling factor. What really distinguishes the garnishment case from the case now before the court is that it is not an action or case which has a plaintiff and a defendant (as quoted by the majority from *Huron v. Huron,* 1 T. U. P. Chrlt. 160), but also for the reasons stated in that case, which were left out of the quotation by the majority. That portion is as follows: "A bill may be filed in equity to procure testimony in aid of the bill original (or for other collateral purposes) against a person not a resident of the county. This is mentioned for the purpose of illustration, and the present case may be assimilated to it. The *garnishee* is not a party, in its technical acceptance, he can not be recognized as a defendant. He is called a 'third person' by the attachment act; and by the process served upon him, he is merely required to surrender to the attacking plaintiff (creditor) property which may enable the plaintiff to derive a benefit from his action. None of the rights of the garnishees are so implicated as to require a trial of his vicinage." The present third-party complaint carries none of the earmarks of the garnishment proceeding against a garnishee which prevent that proceeding from falling within the constitutional provisions relating to venue.

The other cases, or principles, upon which the majority rely is that of vouchment, whereby the vouchee, who may be a nonresident of the county where the main action is pending may be bound by the judgment against the voucher. This remedy is used quite often where the voucher defendant in the main action *may* have a right of action over against a third party. The judgment in the main suit is binding on the vouchee, but only to the extent that the plaintiff was entitled to a judgment against the defendant voucher as to the matter sued upon. The voucher, even under that procedure, must file a *separate action* against the vouchee in the county of the vouchee's residence to establish the vouchee's liability to him. The underlying reason requiring a separate procedural action is that the vouchee is not a party to the case and can not be made such over the objections of the plaintiff. See *Pardue v. Masters,* 211 Ga. 772 (88 SE2d 385).

Yet the majority opinion, in the face of this plain law and the Constitution, and while conceding that this proceeding *"requires the bringing of a second action* to determine the liability of the

vouchee to the voucher," contends that the procedural devices of the third-party practice in Section 14 (a) of the Civil Practice Act *extends the venue provisions of the Constitution* in that very type of action with the following statement: "If the vouchee traditionally could be concluded as to the plaintiff's [in the main case] right to recover and the amount thereof, and no independent venue or jurisdictional grounds were required to bind him as to these two fundamental elements," *there is no reason why "he cannot also be bound as to the third element—his liability over to the original defendant—in the same action."*

Here again we are met with the fallacious argument that a "procedural device" can change the venue provisions of the Constitution. Let us give an example we have referred to previously to show the error of this argument.

It may be noted also that prior to the Civil Practice Act an action for contribution (see *Code* § 37-303) could not be brought unless and until a judgment in the main action has been had and paid in whole or in part by the person claiming contribution. *Huey v. Stewart,* 69 Ga. 768 (3); *Autry v. Southern R. Co.,* 167 Ga. 136 (3) (144 SE 741); *Snyder v. Elkan,* 187 Ga. 164 (2) (199 SE 891). Therefore, it appears that a separate suit had to be brought therefor by the defendant in the main case in the county of the residence of the other joint tortfeasor after these requirements were met, and that the action for contribution *was not then* something "ancillary" to the main action so as to permit bringing the "ancillary" action in the county where the main action was brought although the defendant in the ancillary action was not a resident of that county. "Ancillary" actions of a character which do not require a separate application of the venue requirements of the Constitution can be brought either as a part of the main action or separately therefrom, such as injunctions, discovery, etc., so that the procedural device of permitting the joinder of the party against whom the "ancillary" action is brought is not a determinative factor as to whether the "ancillary" proceeding is one requiring a separate venue or is one controlled by the venue of the main action.

Accordingly, it is my opinion that the action for contribution herein sought, even assuming it can be brought as a third-party

action insofar as jurisdiction to entertain the action is concerned, it must, under the venue provisions of the Constitution, be brought against the third-party defendants in the county of their residence. The trial judge should be reversed.

I am authorized to state that Judge Evans concurs in this dissent.